720 So.2d 415 (1998)
STATE of Louisiana, Appellee,
v.
Willie Calvin SCOTT, Appellant.
No. 31379-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1998.
Rehearing Denied December 3, 1998.
*417 Bobby L. Culpepper & Associates by Bobby L. Culpepper, Jonesboro, for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, Stephen K. Hearn, Jr., Assistant District Attorney, for Appellee.
Before MARVIN, C.J., and HIGHTOWER and CARAWAY, JJ.
MARVIN, Chief Judge.
Willie Calvin Scott appeals his conviction of the second degree murder of Victor Harrison in 1997. In 12 assignments, he complains the evidence was not legally sufficient to convict and of evidentiary rulings by the trial court.
We affirm the conviction.

FACTS
Willie Scott and his girlfriend, Jacqueline Mitchell, shared an apartment in the Alpine Villa apartment complex in Ruston with Victor Harrison and his girlfriend, Latasha Mitchell, Jacqueline's niece. About 9:00 p.m. on June 14, 1997, they began having a birthday party for Loretta Goldsmith, Jacqueline's sister and Latasha's mother. They fried and ate fish, drank alcohol, listened to music and played dominoes. Some party guests smoked marijuana "blunts." Harrison and several friends shot dice outside the apartment.
Around midnight, Jacqueline told Harrison and the other dice players that the game could continue only if she received a "cut" of the money. When Harrison disagreed, she argued with him. Scott sided with Jacqueline and argued with Harrison. After Scott either pushed Harrison or got in Harrison's face, Harrison shoved Scott onto a nearby car. Scott came off of the car with a knife and stabbed Harrison in the heart. Harrison was not armed with a weapon of any kind.
Harrison collapsed and was helped into the apartment. As the other guests became increasingly hostile towards Scott, he and Jacqueline went back into the apartment, locking themselves and Harrison in the apartment. When the others tried to enter the apartment, Scott departed through a bedroom window. Ruston police officers soon arrived and entered the apartment, finding a locked bedroom door. After forcibly entering the locked bedroom, they noted the open window with its curtains pushed to the outside. A search of the apartment and the area outside failed to produce any weapons.
The police arrested Scott on June 16, after they discovered him hiding in his sister's trailer. The State and Scott stipulated that Harrison died on June 16, 1997, as the result of a wound to the heart consistent with a stab wound. Harrison's blood alcohol level *418 on June 15th was 0.162, and a rapid drug screen was positive for THC.[1]

DISCUSSION

Sufficiency of Evidence
We first review the sufficiency of evidence assignment because a conviction on insufficient evidence would make it unnecessary for us to consider other assignments. State v. Hearold, 603 So.2d 731 (La.1992).
Scott did not raise the sufficiency assignment by the motion for post verdict judgment of acquittal in the trial court. A defendant "may move for a post verdict judgment of acquittal ..." to have the trial court decide the sufficiency issue. La.C.Cr.P. art. 821. Our emphasis. La.C.Cr.P. art. 920, however, mandates appellate review of the sufficiency issue when it is assigned as error. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273, J. Hightower concurring in part.
The standard of review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir. 1992), writ denied.
The Jackson standard of review is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing the direct evidence in light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
The Jackson due process standard of review does not allow an appellate court to substitute its appreciation of the evidence for that of the factfinder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. An appellate court does not assess credibility or reweigh the evidence. State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a conviction. See State v. Ford, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847.
Second degree murder is the killing of a human being when the defendant has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Scott killed Harrison by stabbing him in the heart with a kitchen knife. According to Scott, he placed the knife on the car's hood earlier that night after Jacqueline found the knife on the ground and told him to put it up.

Self Defense
Scott contends that he killed Harrison in self-defense. A homicide is justifiable when committed in self-defense by a person who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20. An aggressor cannot claim self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.
The burden of proving self defense is not on the defendant. The state must prove beyond a reasonable doubt that the killing was not in self-defense. State v. Arnold, 30,282 (La.App.2d Cir.1/21/98), 706 So.2d 578. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact *419 could have found beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Cotton, 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937.
The testimony does not greatly conflict about what happened before the stabbing. Loretta Goldsmith, who sat at the kitchen table enjoying whiskey and beer, heard her sister, Jacqueline Mitchell, arguing with Harrison about the dice game. Jacqueline came inside and told Scott what Harrison had said to her. Scott got up from the couch and went outside. When Jacqueline reached down to grab the dice game money from the ground, Harrison grabbed it first. Scott told Harrison not to speak to Jacqueline in a discourteous manner. Harrison responded that Jacqueline was not going to speak to him like that and they were not going to tell him what to do in his own apartment. Scott then pushed Harrison.
Loretta Goldsmith further testified that after Scott pushed Harrison, Harrison pushed Scott onto a car. While Harrison was standing with his hands at his side, Scott came off the car and stabbed him in the chest. Loretta said she could clearly see that Harrison's hands were not holding a weapon. After Scott went back into the apartment where the injured Harrison now was, Loretta heard him say "Boy, I'll f___ you up."
Loretta Goldsmith's testimony was essentially corroborated by that of her 17-year-old daughter, Asalyn Goldsmith. Asalyn related to the jury how Jacqueline told Scott that Harrison and others were outside shooting dice and he needed to do something about it. Scott then went outside and began arguing with Harrison, telling Harrison not to speak to Jacqueline that way. Asalyn observed Scott push Harrison and Harrison push Scott back, but she wasn't sure if Scott was pushed against a car. Just before Harrison was stabbed, Asalyn heard Scott say "Man, you better get off me." Harrison was standing with his hands at his side when he was stabbed. Asalyn did not see a weapon in Harrison's hands.
Latasha Mitchell, Harrison's girlfriend, said she went outside where she heard Jacqueline and Harrison arguing. She watched as Scott got in Harrison's face, telling him not to talk to Jacqueline like that, before Harrison shoved Scott away. Scott then charged up at Harrison and stabbed him. Harrison did not have anything in his hands, which were to his side. Latasha explained how Harrison was stationary and not moving towards Scott when he was stabbed.
Another party guest, Rosalyn Hayes, saw the argument but did not know who pushed first. Hayes saw Scott push Harrison and Harrison push back. Hayes testified that when Harrison was stabbed, he was walking towards Scott with both hands visible, one hand down and one hand up, and without a weapon in either hand.
Scott told the jury he was outside sitting on an automobile when the argument between his girlfriend and Harrison started. His version of events is contradicted by the testimony of others, who said Scott was inside the apartment when the argument commenced. Scott continued that after he got between Harrison and Jacqueline, Harrison told him, "I will f___ you and your bitch up," then shoved him, causing him to land on a car. Scott then grabbed the knife from the hood of the car and stabbed Harrison. Scott said he had earlier placed the knife on the car's hood after Jacqueline found it outside.
Scott admitted to stabbing Harrison, but insisted he did it because Harrison normally carried a gun and had been drinking alcohol and doing drugs the night of the party. He testified that he only stabbed Harrison once because he did not want to kill him. Scott asserted that he went back into the apartment and crawled out through the bedroom window because the party guests had grown hostile towards him after the stabbing. He claimed he was unable to call the police from the safety of the apartment because the telephone had been left outside.
Under either version of what happened, Scott decided to become involved in the argument between Jacqueline and Harrison. Most witnesses said Scott pushed Harrison first. When viewed in a light that most favorably supports the verdict, the evidence allowed the jury to find that Scott was the aggressor, negating his claim of self-defense.
*420 Even should we assume that Scott was not the aggressor, we find the evidence is sufficient for a rational juror to conclude beyond a reasonable doubt that Scott did not kill Harrison in self-defense. Scott professed a fear of Harrison as justification for his actions, yet he admitted telling the police that Harrison was the best friend he ever had and that he considered Harrison to be just like a son. At the time of the stabbing, Harrison was 18 years old and Scott was 47 years old.
No witness testified that he or she saw Harrison with a weapon. Scott testified that Harrison had one hand in his pocket when the stabbing occurred. Other witnesses testified that Harrison's hands were open and held no weapon. Scott had told the police that he never saw Harrison with a gun, but thought he had one because he had seen bullets in Harrison's room. Natasha Mitchell, a defense witness, testified that the day after the incident she went into Harrison's bedroom and found a jewelry box containing bullets. Police searched the apartment and the area outside on the night of the stabbing but found no weapons.
Even after being pushed against the car, and immediately before stabbing Harrison, Scott was not in a position where he could have reasonably believed he was in imminent danger and that the killing was necessary to avoid that danger. Three witnesses testified that Harrison did not approach Scott after pushing him, but just stood there. We defer to the jury's rejection or acceptance of a witness's testimony in whole or in part. State v. Rogers, supra. The state proved beyond a reasonable doubt that the killing was not committed in self defense.
Scott argues that at best, the evidence supports a finding of manslaughter due to the nature of the circumstances involved. A homicide which would otherwise be second degree murder is manslaughter when it is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31. "Sudden passion" or "heat of blood" are not elements of the crime of manslaughter, but are mitigating factors in the nature of a defense which exhibit a degree of culpability less than that present when a homicide is committed without them. State v. Stewart, 26,168 (La.App.2d Cir.8/17/94), 641 So.2d 1086, writ denied.
If the jury believes that the preponderance of the evidence establishes that a defendant acted in a "sudden passion" or "heat of blood," a manslaughter verdict is warranted. See State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993). In reviewing a defendant's claim that he met this burden, an appellate court must determine whether a rational trier of fact, upon viewing the evidence in the light most favorable to the prosecution, could have found that those mitigating factors had not been established by a preponderance of the evidence. State v. Lewis, 28,973 (La. App.2d Cir.12/11/96), 685 So.2d 1130, writ denied.
The only possible "provocation" by Harrison was a push in response to Scott's aggressive actions. Viewing the evidence in light most favorable to the prosecution, a rational juror could have concluded that mitigating factors had not been established by a preponderance of the evidence to reduce the killing to manslaughter.

Improper Questions
Scott complains the trial court allowed the prosecution, while examining Loretta Goldsmith, to ask questions that had already been answered. In response to a general question about what happened after Scott and Harrison began arguing, Loretta told the jury that Scott pushed Harrison and Harrison pushed back. The prosecutor immediately asked her if she saw Scott push Harrison. Loretta said "Yes." Several questions later, the prosecutor asked Loretta if she "had seen, initially, the defendant, Willie Scott, push Victor Harrison." Loretta answered affirmatively before defense counsel objected that the question had already been asked and answered. The prosecutor argued he was trying to clarify the identities of the parties. The court overruled the objection. The prosecutor then repeated the question.
Scott argues that allowing the repetitive questioning wasted time and unfairly prejudiced him because the jury heard five times that Scott pushed Harrison first. We disagree. *421 The defense objected after the prosecutor asked Loretta for the first time if Scott "initially" pushed Harrison. Before this, the prosecutor had only asked if Scott had pushed Harrison, not if Scott was the first to do the pushing. While Loretta had already answered that she observed Scott push Harrison and Harrison push back, this was in response to the questions "What happened after that?" and "Would you have been in a position to see if there had been other contact other than what you just testified about?" Loretta had yet to answer who had initiated the pushing. This testimony was neither repetitive nor prejudicial.
Even if the objection was improperly overruled, a judgment or ruling shall not be reversed by an appellate court because of any error unless substantial rights of the defendant are prejudiced. La.C.Cr.P. art. 921.
Two of Scott's assignments of error refer to when the state asked Loretta Goldsmith, "And it was at that point that the defendant came up and struck him in the chest with a knife?" The defense objected to the question, requesting that the jury be admonished because the question mischaracterized the evidence. Stating that the jury would have to make its own decision as to what was said, the court allowed the state to proceed. Scott argues that this question misrepresented the evidence because it did not mention that Scott came up from a car he had been pushed onto. Scott maintains that this misrepresentation of testimony was not effective for the ascertainment of truth as required by La. C.E. art. 611.
There was no mischaracterization of evidence by the prosecutor, who simply left out of his question that Scott had been pushed back on anything. There was obviously no attempt to conceal this fact as the jury had previously heard this same witness testify that Scott had been pushed onto a car. We note that during cross-examination, defense counsel asked this witness if Scott had been pushed against a car. We find no error in these assignments.

Res Gestae
Asalyn Goldsmith testified that Jacqueline told Scott that "[t]hey out there shooting dice. You need to go out there and do something." Scott argues that this testimony was hearsay and not part of the res gestae because the alleged statement occurred before any verbal or physical altercation and could not be a necessary incident to the criminal act.
The concept of res gestae is codified in La. C.E. art. 801(D)(4). See footnote 2 to State v. Walters, 25,587 (La.App.2d Cir.1/19/94), 630 So.2d 1371, writ denied. La. C.E. art. 801(D)(4) provides that a statement is not hearsay if:
The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
This court stated in State v. Walters, supra:
[T]he res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before and after the commission of the crime but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances.
The statement by Jacqueline Mitchell falls within this hearsay exception. Jacqueline wanted to stop the dice game unless she received money for allowing the game to be played. She argued with Harrison, then came inside to tell Scott about the argument. Thus, Jacqueline's remark to Scott was a spontaneous response to comments Harrison made to her. Stirred by Jacqueline's report of Harrison's reaction, Scott went outside, where he would soon mortally wound Harrison. The statement was part of the continuous chain of events that ultimately led to Scott stabbing Harrison. The court correctly allowed this testimony.

*422 Opinion Testimony

Scott contends that the trial court improperly allowed Asalyn Goldsmith to answer that she would have seen a weapon if Harrison had had a weapon. Scott insists that he was prejudiced because Asalyn was not in a position and would have been unable to see a hidden weapon.
A lay witness may testify in the form of an opinion if the opinion is rationally based on his or her perception and helps to establish a clear understanding of his testimony or the determination of a fact in issue. La. C.E. art. 701. A witness is permitted to draw reasonable inferences based on personal observations. State v. Hattaway, 28,060 (La.App.2d Cir.5/8/96), 674 So.2d 380, writ denied.
Asalyn Goldsmith testified that she could see that Harrison's hands did not contain a weapon. She observed what was taking place, having left the apartment to go outside after hearing the parties arguing. When the question in controversy is viewed together with the questions preceding it regarding Harrison's hands, it is apparent that the witness was not meaning she could detect a hidden weapon, but only that she would have detected a weapon had Harrison had one in his hands.
Assuming that the objection was improperly overruled, we find no prejudice. No other witness, including the defendant, testified that he or she saw a weapon in Harrison's possession when he was stabbed. The police officers did not find a weapon at the scene. Moreover, defense counsel did not attempt to clarify Asalyn's statement on cross-examination. This assignment is without merit.

Mistrial
Asalyn Goldsmith's testimony was interrupted when she began crying. At this point in the trial, the transcript reads:
Q: All right. Did you see Mr. Scott go into the house?
A: Yes I did.
Q: What did he do after he went in the house?
(OFF RECORD INTERRUPTION WITNESS CRYINGBETTY, DO YOU SHOW THIS)
A: -house, but I didn't see him no more after he went in the house. They closed the door. I didn't see him no more.
Addressing this interruption, Scott maintains that a mistrial should have been granted because the incompleteness of the trial transcript made it impossible for the defense to set forth any specific issues regarding the interruption for this court's review.
Scott relies on La.C.Cr.P. art. 775, which provides that "[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial ..." Emphasis added. Scott did not move for a mistrial, as required by Art. 775. His failure to timely move for a mistrial was a waiver of any error he may have claimed pursuant to Art. 775. State v. Johnson, 529 So.2d 466 (La.App. 1st Cir. 1988), writ denied.
In felony cases, "the clerk or court stenographer shall record all of the proceedings, including the ... testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel." La.C.Cr.P. art. 843. Without a complete record from which a transcript for appeal may be prepared, a defendant's right of appellate review is rendered meaningless. State v. Ford, 338 So.2d 107 (La.1976). However, reversal of a conviction is not required when the apparent omission from the record is inconsequential and immaterial to proper review. State v. Ford, supra; State v. Mamon, 26,337 (La.App.2d Cir.12/16/94), 648 So.2d 1347. When a defendant's attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors, the interests of justice require that the defendant be afforded a new, fully recorded trial. State v. Ford, supra. Our Emphasis.
The court in Ford placed great emphasis on the fact that the defendant had *423 separate appellate counsel and trial counsel, meaning his appellate counsel would not have an independent knowledge of trial events except as shown by the incomplete record. Scott's appellate counsel enrolled as counsel of record at the sentencing hearing. The similarities between Ford and this case end there. The record in Ford was devoid of the examination of four witnesses, the voir dire examination of the prospective jurors and the impaneling of those chosen, and the prosecution's opening statements. In contrast, it does not appear that much is omitted in this instance. Before the interruption, the state asked the witness about what happened after Scott went back into the "house." Following the interruption, the witness is recorded as answering, "-house, but I didn't see him no more after he went in the house. They closed the door. I didn't see him no more." The witness was obviously answering the pre-interruption question.
More importantly, at the time of the interruption, this witness was testifying as to what occurred after Scott had stabbed Harrison. Scott is not now complaining that he was prejudiced by the witness crying, but only by the alleged deficiency in the trial transcript. Under these circumstances, we do not find any prejudice to Scott's appeal rights.

Evidence of Victim's Character
Other assignments of error relate to the trial court not allowing Scott to introduce evidence of the victim's dangerous character by questioning a police officer about frequent calls to the police from the Alpine Villa area and by testifying about Harrison's habit of carrying a gun and his reputation as a drug dealer. In a related assignment, Scott argues that the trial court erred in allowing his misdemeanor convictions into evidence. This assignment was not briefed and is deemed abandoned. URCA 2-12.4.
On cross-examination, defense counsel asked Officer Curtis Hawkins if the police receive frequent calls from the Alpine Villa area. The court sustained the state's objection to the relevancy of this question. Scott asserts in brief that the defense strategy in asking this question was to introduce evidence of criminal activity in the Alpine Villa area.
When Scott took the witness stand, he was asked if Harrison sold dope. Scott said Harrison did. The state objected, and the objection was sustained. When later asked by defense counsel why he felt justified in stabbing Harrison, Scott responded, "Well, he normally carried a gun." The state's objection to this question was also sustained after Scott answered.
Error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by counsel. La. C.E. art. 103(A). Scott never sought additional testimony he hoped to elicit from these witnesses. Nonetheless, we do not find that the trial court erroneously excluded this evidence.
Evidence of a person's character or trait of his character is ordinarily not admissible to prove he acted in conformity therewith on a particular occasion. La. C.E. art. 404. However, evidence of a victim's dangerous character is relevant to a claim of self-defense because such evidence shows that the victim was the aggressor and that the defendant reasonably apprehended the danger. State v. Gantt, 616 So.2d 1300 (La.App. 2d Cir.1993), writ denied.
La. C.E. art. 404 provides in part:
A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
. . . . .
(2) Character of victim. (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense *424 charged, evidence of his dangerous character is not admissible ...
. . . . .
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith....
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible ...
Evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that at the time of the incident the victim made a hostile demonstration or committed an overt act against the accused of such character that would have created in the mind of a reasonable person a belief that he was in immediate danger of losing his life or suffering great bodily harm. State v. Gantt, supra. An "overt act" within the meaning of Art. 404 is "any act of the victim which manifests in the mind of a reasonable person a present intention on his part to kill or do great bodily harm." State v. Demery, 28,396 (La.App.2d Cir.8/21/96), 679 So.2d 518, writ denied. The overt act must be directed at the accused. State v. Washington, 30,043 (La.App.2d Cir.1/23/98), 706 So.2d 203; State v. Jones, 451 So.2d 1181 (La.App. 1st Cir.1984).
Scott failed to produce evidence of a hostile demonstration or overt act, a predicate to introducing evidence of Harrison's dangerous character. His own testimony did not establish any act or movement by Harrison that would cause a reasonable person to believe he was in imminent danger of losing his life or suffering great bodily harm. A "push" does not suffice on this record. Accordingly, the evidence was properly excluded.
We note that even though the trial court denied admission of this evidence, the jury still heard basically the same evidence through other witnesses, minus other testimony about the criminal atmosphere in the area. While Scott was not allowed to answer whether or not he knew Harrison was a drug dealer, earlier during the trial, Loretta Goldsmith testified that she could get marijuana "blunts" from Harrison if she wanted. In addition, even though the trial court at one point did not allow Scott to say that Harrison normally carried a gun, Scott had previously stated the same thing twice without objection.
We find no merit in these assignments.

Closing Argument
The remaining assignment addresses statements made by the prosecution in rebuttal argument. Defense counsel objected when the district attorney told the jury:
Based on those facts, you're going to go back there and you're going to decide what we're going to permit in this parish as to whether or not that is a worthy cause-Scott maintains this was an appeal to the jury's sympathies and prejudices.
Argument by counsel shall not appeal to prejudice. La.C.Cr.P. art. 774. A conviction will not be reversed due to an improper remark during closing argument unless the court is thoroughly convinced that the remark influenced the jury and contributed to the verdict. State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, cert. denied.
We are not convinced the comments complained of influenced the jury and contributed to the verdict. This court has examined similar prosecutorial comments about what a jury should permit in a parish. In State v. Powell, 28,788 (La.App.2d Cir.11/1/96), 683 So.2d 1281, writ denied, we did not find that a jury was improperly influenced after a prosecutor remarked to the jury that it needed to "think of the standard that you want to set for this parish." The jury in this matter heard sufficient evidence from which it could have concluded beyond a reasonable doubt that Scott did not commit the killing in self-defense. The trial court instructed the jury that they must "confine [themselves] strictly to a dispassionate consideration of the evidence...." This assignment of error lacks merit.

*425 Errors Patent

At sentencing, the trial court informed Scott that he had three years to file for post-conviction relief, with the three years "probably" beginning to run on this date. This is inadequate compliance with La.C.Cr.P. art. 930.8. The prescriptive period begins to run when the judgment becomes final under either La.C.Cr.P. art. 914 or 922.
We direct the district court to send Scott appropriate written notice of when the prescriptive period begins to run within 10 days of the rendition of this opinion and to file proof of defendant's receipt of such notice in the record.

DECREE
The conviction is AFFIRMED.
HIGHTOWER, J., concurs with written reasons.
HIGHTOWER, J., concurring
Defendant's evidence-sufficiency complaint, raised merely by assignment of error rather than by post-trial motion for acquittal in the district court, is not properly before us. See La.C.Cr.P. art. 821; State v. Hall, 624 So.2d 927 (La.App.2d Cir.1993), writ denied, 629 So.2d 1182 (La.1993); Bates v. Blackburn, 805 F.2d 569 (5th Cir.1986), cert. denied, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). See also discussion in concurrence to State v. Green, 28,994 (La. App. 2d Cir.2/25/97), 691 So.2d 1273, and authorities therein. Thus, I do not reach that of the appeal, but otherwise concur in the affirmance.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and HIGHTOWER, BROWN, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] The coroner's report in the record shows June 22, 1997 as the date of death.