Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,056-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

LORENZO DUNKENTELL                          Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 222,306

Honorable Charles A. Smith, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By:  Chad Ikerd

LORENZO DUNKENTELL                          Pro Se

J. SCHUYLER MARVIN                       Counsel for Appellee
District Attorney

J. CHANCELLOR NERREN
RICHARD R. RAY
Assistant District Attorneys

* * * * *

Before PITMAN, THOMPSON, and MARCOTTE, JJ.

**THOMPSON, J.**

Police bodycam footage captured a victim identifying his shooter, the defendant, by name while police officers were administering first aid for multiple gunshot wounds. While hospitalized, the victim told his father he intended to address his shooting directly rather than through law enforcement, so he recanted his videotaped identification of the defendant to the police. The following week the victim died from his injuries while still hospitalized. The defendant fled to Texas immediately after the shooting, and evidence gathered in the police investigation revealed that the vehicle he was driving linked him to the shooting in both time and place. The defendant was indicted and charged with second degree murder. After a trial, he was convicted as charged by a unanimous jury and sentenced to life in prison without benefits of probation, parole, or suspension of sentence. He now appeals. For reasons more fully detailed below, we affirm the defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

A resident of Yarborough Street in Bossier City, Louisiana, called police the morning of July 8, 2021, after hearing several gunshots. Officer Matthew Welch with the Bossier City Police Department ("BCPD") responded within minutes of the call. Upon arriving at the scene, Officer Welch was wearing a body camera that recorded his entire encounter with the victim, LaMarcus Stewart, who was lying bleeding in the driveway of the residence. Despite being shot several times, Stewart was conscious and responsive to the police officers who were assisting him. Officer Welch and other police officers began to administer first aid to Stewart, including the application of a tourniquet to his thigh and packing multiple gunshot

wounds. As the officers were administering first aid while waiting for Emergency Medical Services ("EMS") to arrive, Officer Welch questioned Stewart about who shot him. As was captured by Officer Welch's body camera, Stewart stated that he had been shot by Lorenzo Dunkentell. Stewart also told officers that Dunkentell was driving a gray Charger. EMS arrived, administered assistance, loaded Stewart onto a stretcher, and transported him to the hospital. Stewart sustained 11 gunshot wounds and received extensive medical treatment at Ochsner LSU Health in Shreveport.

On July 13, 2021, five days after the shooting, Detective Jason Warren with BCPD visited Stewart in his hospital room. Det. Warren recorded his conversation with Stewart. In this statement to Det. Warren, Stewart recanted his prior statement identifying Dunkentell as the man who shot him. Stewart explained that Dunkentell was his "cousin" and claimed he would never shoot him. Five days later, on July 18, 2021, Stewart died from severe pneumonia, a complication that arose from the trauma of his numerous gunshot wounds.

On August 2, 2021, Johnnie Revels provided a recorded statement to BCPD at the police station. Revels stated that he lived on Yarborough Street, a few houses down from the scene of the shooting. Revels was not home at the time of the shooting. However, earlier that morning, at approximately 9:00 A.M., he left his house in his vehicle to drive to the bank. On his way out of the neighborhood, he passed LaMarcus Stewart in a black vehicle. Stewart waved at him as he drove past. Revels stated that Dunkentell was driving very close behind Stewart in a gray Charger. Dunkentell also waved at him. Revels stated that he knew of both men from seeing them on the street.

Dunkentell was charged by true bill of indictment with second degree murder. Dunkentell subsequently filed a motion to suppress Stewart's statement to the police officers identifying him as the shooter as inadmissible hearsay. Dunkentell also sought to suppress statements Stewart made to his family members during his hospital stay regarding the shooting.

After the hearing on the motion to suppress, the trial court issued a written opinion and determined that Stewart's "dying declaration" was admissible for the trial. The trial court also permitted Stewart's recanting statement to be admitted and provided it would become a function of the trier of fact to determine the weight and credibility of the contradictory statements.

Subsequently, Dunketell filed a motion to determine the admissibility of "bad character" evidence regarding Stewart, including prior criminal charges and a criminal conviction. The minutes of the hearing on that matter reflect that the trial court excluded any evidence related to the bad character of Stewart.

On December 18, 2023, the trial commenced. The jury heard testimony from Johnnie Revels, the neighbor on Yarborough Street who had previously provided BCPD with his recorded statement. Revels testified consistently with his prior statement, that as he drove out of the neighborhood where the shooting occurred around 9:00 A.M., he recalled passing Stewart, who was driving his vehicle into the neighborhood. Revels testified that he also observed Dunkentell in a gray Charger following directly behind Stewart's vehicle on Yarbrough Street near the location of the shooting.

3

Detective Camille Stewart with the BCPD crime scene unit testified that the day of the shooting she recovered multiple shell casings and bullet jackets from the crime scene. Det. Stewart testified that a search warrant was obtained for the gray Charger and that upon the execution of the search warrant, officers discovered the vehicle had several bullet holes. Det. Stewart further testified that multiple bullet fragments and shell casings were found under the hood and in the fender of the vehicle. She testified that no firearm was recovered from the crime scene or from Dunkentell's vehicle, so a ballistics report of the bullets recovered could not be prepared. Det. Stewart also testified that several items were recovered from the gray Charger linking Dunkentell to the vehicle, including paperwork containing his name and identifying information, as well as a prescription pill bottle with his name on it.

Dr. Frank Peretti, the forensic pathologist who performed Stewart's autopsy, testified that Stewart sustained 11 gunshot entry wounds, including to his chest, abdomen, and the area of his pelvis. Dr. Peretti testified that the autopsy revealed extensive surgical interventions had occurred to Stewart after the shooting. Dr. Peretti testified that Stewart died due to acute respiratory distress and severe pneumonia, a complication that arose from the severe trauma of sustaining multiple gunshot wounds.

BCPD Detective Jason Warren testified regarding video surveillance footage from a nearby apartment building taken on the morning of the shooting. The surveillance footage corroborated Revels' testimony regarding Stewart entering the neighborhood in his vehicle and a gray Charger following closely behind Stewart's vehicle into the neighborhood. The video surveillance footage also showed that just after the time of the

shooting, the gray Charger was driving away from the scene of the shooting at a high rate of speed. Det. Warren testified regarding license plate reader cameras, which capture the license plate information of vehicles traveling on roadways. Approximately ten minutes after the shooting, the license plate reading camera on Benton Road showed a gray Charger with the license plate belonging to Dunkentell's mother.

Additionally, Det. Warren testified regarding cell phone location data that was introduced into evidence. Dunkentell's primary cell phone was located around the time and in the vicinity of Yarbrough Street where the shooting occurred. Det. Warren also testified regarding cell phone records showing Dunkentell purchased a new cell phone under a different name, but he used his personal email address and his own date of birth on the cell phone. Dunkentell discontinued use of his primary cell phone after the time of the shooting and used only the new cell phone.

Det. Warren testified that license plate reader cameras also identified Dunkentell's gray Charger on Interstate 20, crossing from Louisiana into Texas on July 8, 2021. On July 18, 2021, a vehicle owned by Dunkentell's girlfriend was captured on the license plate cameras following a gray Dodge Charger to a body shop on Barksdale Boulevard.

Jasmine Simmons, Dunkentell's girlfriend, testified at trial and corroborated the evidence obtained during the police investigation. Specifically, Simmons testified that Dunkentell arrived at her home in Dallas, Texas, on the afternoon of July 8, 2021. Simmons testified that Dunkentell had two cell phones. Simmons also testified that they returned to Shreveport on July 18, 2021, to take Dunkentell's Charger to a body shop.

Coutrell Guichard, Stewart's father, testified at trial regarding his son's shooting, hospitalization, and death. Guichard testified that Stewart told him he recanted his initial statement identifying Dunkentell as his shooter because "he [was] gonna keep it in the streets" and "he was gonna handle it himself." The defense did not call additional witnesses, and the trial ended with the conclusion of the State's presentation of witnesses and evidence.

The jury trial concluded on December 21, 2023; the jury returned a unanimous verdict of guilty of second degree murder, as charged. On February 20, 2024, Dunkentell was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Dunkentell filed a motion for new trial and a motion for post verdict judgment of acquittal, which were denied by the trial court. Dunkentell now appeals his conviction of second degree murder.

**DISCUSSION**

Dunkentell asserts two assignments of error:

**Assignment of Error No. 1: The evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 443 U.S. 307 (1979) standard, was insufficient to prove beyond a reasonable doubt that Lorenzo Dunkentell was guilty of second degree murder.**

Dunkentell argues that the State failed to prove each element of the crime of second degree murder beyond a reasonable doubt, arguing that the State's case was based on a recanted statement by Stewart and circumstantial evidence placing Dunkentell in the area at the time Stewart was shot. Dunkentell points out that while Stewart did tell police officers that Dunkentell was the shooter immediately after the shooting, he denied or did not remember giving the statement five days later when he was conscious in

6

the hospital speaking with Det. Warren.  In the hospital, Stewart claimed that Dunkentell was not the shooter but was present at the time "they" shot him.

Dunkentell argues that the police failed to investigate another white vehicle that was shown on video surveillance footage.  Dunkentell also notes that the police did not send any of the shell casings found in the driveway to the crime lab for analysis to determine if they were from different weapons.  Dunkentell argues that there is no evidence to indicate that his flight to Texas was based on a cognizance of guilt rather than fear for his own safety.

The standard of review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Grimble*, 51,446 (La. App. 2 Cir. 7/5/17), 224 So. 3d 498.  This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.  *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.  The appellate court does not assess the credibility of witnesses or reweigh evidence.  *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.  A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09), 23 So. 3d 913.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Hampton*, 52,403 (La. App. 2 Cir. 11/14/18), 261 So. 3d 993, *writ denied*, 19-0287 (La. 4/29/19), 268 So. 3d 1029. Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. *Hampton, supra*. Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. Circumstantial evidence provides proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *Hampton, supra*.

Viewing the evidence in the light most favorable to the prosecution, we conclude the State presented sufficient evidence for a reasonable trier of fact to convict Dunkentell of second degree murder. The State presented evidence that Dunkentell was at the scene of the shooting and had been following directly behind Stewart's vehicle. This fact was confirmed by testimony of multiple witnesses, video surveillance footage, and cell phone location records. The evidence at trial also proved that Dunkentell fled the scene of the shooting at a high rate of speed in his mother's vehicle, the gray

8

Charger. Dunkentell then fled to Texas and purchased what is commonly referred to as a "burner phone" to use rather than his existing phone. Stewart's own statement, captured on police bodycam footage immediately after he was shot, showed that he specifically identified Dunkentell as the man who shot him and the vehicle he was driving. The State did acknowledge that Stewart recanted his "dying declaration" statement later in the hospital; however, the jury found Stewart's father's testimony at trial to be credible when he explained that Stewart, thinking he would recover from his wounds, wanted to seek street justice against Dunkentell. The jury clearly applied great weight to Stewart's videotaped statement to police immediately after he was shot. Accordingly, this assignment of error is without merit.

**Assignment of Error No. 2:** **It was error for the trial judge to exclude the evidence of Stewart's conviction record despite the fact that his statements were being offered as evidence in the case.**

Dunkentell argues that the trial court erroneously denied his attempt to introduce the conviction record of Stewart into evidence. Specifically, Dunkentell sought to introduce the bill of information and minutes from a criminal charge of attempted second degree murder and possession of a firearm by a convicted felon. In that case, Stewart ultimately pled guilty to possession of a firearm by a convicted felon. Dunkentell argues that the introduction of a "dying declaration" hearsay statement is impeachable by bad character evidence, including a history of criminal convictions. Dunkentell argues that Stewart's conviction record should have been admitted because his hearsay statements were offered into evidence.

Evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that at the time of the incident, the

9

victim made a hostile demonstration or committed an overt act against the accused of such character that would have created in the mind of a reasonable person a belief that he was in immediate danger of losing life or suffering great bodily harm. *State v. Scott,* 31,379 (La. App. 2 Cir. 10/28/98), 720 So. 2d 415, 424, *writ denied,* 99-0170 (La. 5/14/99), 741 So. 2d 664. An "overt act" within the meaning of La. C.E. art. 404 is any act of the victim which manifests in the mind of a reasonable person a present intention on his part to kill or do great bodily harm. *Scott, supra.*

Before being entitled to present evidence of the victim's character, the defendant must present appreciable evidence of the overt act. La. C.E. art. 404; *State v. Woodhead,* 03-1036 (La. App. 5 Cir.1/27/04), 866 So. 2d 995, 1001, *writ denied,* 04-0598 (La. 7/2/04), *citing State v. Edwards,* 420 So. 2d 663 (La. 1982). Once the defendant has presented appreciable evidence of the overt act, the trial court cannot exercise its discretion to infringe on the fact-determination function of the jury by disbelieving this defense testimony and thus, deny the accused a defense permitted by law. *Woodhead, supra.* Thus, the threshold inquiry is whether the defendant presented evidence of a hostile demonstration or an overt act on the part of the victim. *State v. Johnson*, 41,428 (La. App. 2 Cir. 9/27/06), 940 So. 2d 711, *writ denied,* 06-2615 (La. 5/18/07), 957 So. 2d 150.

The record provides no evidence of an altercation between Stewart and Dunkentell on the day of the shooting. The record does not indicate that Stewart was armed on the day of the shooting. Further, the character evidence that Dunkentell sought to admit was evidence of a specific act, which is prohibited by La. C.E. art. 404 to show the dangerous character of the deceased. The record does not show that Dunkentell was aware of a

general violent reputation or any past violent acts of Stewart. No allegation that Dunkentell was provoked to shoot Stewart in self-defense or self-preservation was ever made to justify Stewart being repeatedly shot. Therefore, evidence of the character of Stewart was properly excluded. Accordingly, this assignment of error is without merit.

**Error Patent Review**

Our review of the record reveals that the trial court failed to advise Dunkentell of the time delays for filing an application for post-conviction relief in compliance with La. C. Cr. P. art. 930.8.

The Louisiana Supreme Court has held that La. C. Cr. P. art. 930.8(C), which requires the trial court to inform the defendant of the limitations period for filing an application for post-conviction relief, is supplicatory language that does not bestow an enforceable right to an individual defendant. *State v. Williams*, 34,936 (La. App. 2 Cir. 9/26/01), 795 So. 2d 1221. The failure to advise a defendant of these rights is not grounds to vacate the sentence and remand for resentencing. *Id.* at 1223; *State v. Cooper*, 31,118 (La. App. 2 Cir. 9/23/98), 718 So. 2d 1063, *writ denied*, 99-0187 (La. 5/14/99), 741 So. 2d 663.

The trial court should have advised Dunkentell, and he is hereby advised, that no application for post-conviction relief, including applications to seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.

11

## CONCLUSION

For the foregoing reasons, Lorenzo Dunkentell's conviction and sentence are affirmed.

**AFFIRMED.**