LOLLEY, J.
| t This criminal appeal arises from the Third Judicial District Court, Parish of Lincoln, State of Louisiana. The defendant, Robert Earl Fortune, was charged by bill of information with three offenses: possession or introduction of contraband into a penal institution — a violation of La. R.S. 14:402; possession of marijuana with intent to distribute — a violation of La. R.S. 40:966; and illegal carrying of a weapon on school grounds — a violation of La. R.S. 14:95.2. He entered a plea of guilty to each charge, reserving his right to seek appellate review of the trial court’s denial of the motion to suppress the evidence, pursuant to State v. Crosby, 338 So.2d 584 (La.1976). Fortune was sentenced to one year of imprisonment at hard labor for the illegal carrying of a weapon on school grounds. For both the possession or introduction of contraband into a penal institution and the possession of marijuana with intent to distribute he was sentenced to five years of imprisonment at hard labor, all but one year suspended, five years of supervised probation, as well as a fine of $1,000.00, plus costs of court. This prison time was ordered to run concurrently. Fortune now appeals the denial of his motion to suppress. For the following reasons, we amend Fortune’s conviction and sentence, and as amended, affirm.
Facts
On April 20, 2010, Tommy Clark, Jr., Chief of Police for the City of Grambling, was driving on Grambling University’s campus when he spotted a vehicle driving *1004 toward him going the wrong way down a one-way street. The vehicle driving the wrong way as well as Chief Clark’s police vehicle both stopped, facing each other head-on. Chief Clark exited his vehicle and | {.approached the passenger side of the other vehicle where Fortune was seated. Chief Clark testified that after noticing that Fortune was “extremely nervous” he asked him to exit the vehicle. He advised Fortune that he was going to frisk him for officer safety, and he also asked both Fortune and the driver to show him identification. Chief Clark testified that at this time Fortune informed him that he had “weed” in his pocket for his personal use on “Smoke Weed Day.” Fortune testified that he did not tell Chief Clark about the marijuana, but that the officer discovered it during the pat-down. Chief Clark subsequently arrested both Fortune and the driver of the vehicle.
Chief Clark next conducted a search of the vehicle and discovered a loaded firearm in a backpack in the passenger compartment. Fortune was transported to the detention center. Once there, Fortune was asked to remove his shoes as part of the booking procedure. At this point he told Chief Clark that he had more marijuana in his sock. Twenty-three individual bags of marijuana were retrieved from Fortune’s sock.
Fortune was charged with possession or introduction of contraband into a penal institution — a violation of La. R.S. 14:402, possession of marijuana with intent to distribute — a violation of La. R.S. 40:966, and illegal carrying of a weapon on school grounds — a violation of La. R.S. 14:95.2. Fortune filed a motion to suppress claiming the evidence to be used against him in trial was obtained through an unconstitutional search and seizure. After hearing the testimony of both Chief Clark and Fortune at [sthe suppression hearing, the trial court denied the motion to suppress. Subsequently, Fortune entered pleas of guilty to all three charges. This appeal ensued.
Discussion
Fortune argues that the trial coui't erred in denying his motion to suppress because the evidence was obtained as the result of an illegal search and seizure. He claims Chief Clark did not articulate any grounds upon which a reasonably prudent person would have believed he was in danger; therefore, it was unconstitutional for the officer to frisk Fortune, which led to the discovery of the marijuana in his pocket, the arrest, the discovery of the firearm, and the discovery of the marijuana in his sock. Additionally, Fortune contends that even if Chief Clark had the right to frisk him for officer safety, it was illegal for him to reach into his pocket and retrieve the marijuana, also leading to the arrest and series of discoveries. Fortune also claims the search of the vehicle that led to the discovery of the firearm was illegal because it was not a true inventory search and it was not done in good faith — Chief Clark admitted that only contraband was inventoried. For the following reasons, we disagree.
Article 1, Section 5 of the Louisiana Constitution as well as the Fourth Amendment to the United States Constitution protect individuals from unreasonable searches and seizures. Generally, a search warrant is required for a search to be considered constitutional; however, over time historical and practical exceptions have developed justifying warrantless |4searches under certain circumstances. State v. Escoto, 2009-2581 (La.07/06/10), 41 So.3d 1160.
It is permissible for a police officer to detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individu *1005 al has committed or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Boyer, 2007-0476 (La.10/16/07), 967 So.2d 458. For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); State v. Pena, 43,321 (La.App.2d Cir.07/30/08), 988 So.2d 841. Reasonable cause for an investigatory stop is something less than probable cause, but the officer must be able to articulate knowledge of particular facts, which in conjunction with reasonable inferences drawn therefrom provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). Nervousness may be one of the factors leading to a finding of reasonable cause to stop. State v. Willis, 31,561 (La.App.2d Cir.01/20/99), 728 So.2d 493.
Police officers are justified in ordering passengers out of cars for officer safety. It may be a slight inconvenience, but it is not a serious intrusion upon privacy interests. State v. Landry, 588 So.2d 345 (La.1991), The United States Supreme Court explained this in Arizona v. Johnson, 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009):
For the duration of a traffic stop, we recently confirmed, a police officer effectively seizes “everyone in the vehicle,” the driver and all passengers. Accordingly, we hold that, in a traffic-stop setting, the first Terry condition — a lawful investigatory stop — is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous. (Citations omitted.)
Id. at 784.
Reviewing courts must look to the totality of the circumstances to determine whether the police officer possessed the requisite justification for such a stop. Officers must be allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. State v. Temple, 2002-1895 (La.09/09/03), 854 So.2d 856. The standard for investigatory stops and pat-downs for officer safety as set forth in Terry has been codified by the Louisiana legislature in La. C.Cr.P. art. 215.1. In pertinent part, it reads:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such | f,person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
The United States Supreme Court has explicitly held that when a car is impounded standard police procedure in *1006 making reasonable “inventory searches” to preserve a car owner’s property and protect the police against claims of lost or stolen property does not constitute an unreasonable search which offends the Fourth Amendment to the United States Constitution. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Louisiana has adopted the United States Supreme Court’s reasoning on the issue of inventory searches. State v. LaRue, 368 So.2d 1048 (La.1979). However, this rule does not allow such a search to be used as a subterfuge for rummaging through an arrestee’s vehicle without a warrant for the primary purpose of seizing evidence. Id. Some of the factors that are significant in determining that a so-called inventory search was merely subterfuge are that: (1) formal impoundment procedures were not followed; (2) the search was conducted “in the field”; (3) a tow truck was not called before commencing the search; (4) the car owner was not asked for his consent to the search, if his car contained valuables, if he would waive an inventory search, or if he could make arrangements to have someone pick up the vehicle. Id.
After making an arrest, an officer has the right to much more thoroughly search a defendant and his wingspan, or lunge space, for weapons or evidence incident to a valid arrest. State v. Sanders, 36,941 (La.App.2d Cir.04/11/03), 842 So.2d 1260, 1263, writ denied, 2003-1695 (La.05/14/04), 872 So.2d 516. The United States Supreme Court explained that the rationale for this is the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court shed light on this rule in regard to vehicles, stating “when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.” The Belton court went on to state that a police officer may also search a container found in the passenger compartment. Id.
A trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Whitehead, 42,677 (La.App.2d Cir.04/02/08), 980 So.2d 243, writ denied, 2008-1096 (La.01/09/09), 998 So.2d 713. When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. State v. Johnson, 32,384 (La.App.2d Cir.09/22/99), 748 So.2d 31. Louisiana C. Cr. P. art. 703(D), governing the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant, states in pertinent part:
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a 1 purported confession or statement by the defendant or of any evidence seized without a warrant.
Great weight is placed upon the trial court’s ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App.2d Cir.05/08/96), 674 So.2d 1082. This *1007 court reviews a district court’s ruling on a motion to suppress under the manifest error standard for factual determinations as well as credibility and weight determinations while applying a de novo review to findings of law. State v. Hemphill, 41,526 (La.App.2d Cir.11/17/06), 942 So.2d 1263, writ denied, 2006-2976 (La.03/09/07), 949 So.2d 441.
In the case sub judice Fortune calls into question the constitutionality of two separate searches. The first search occurred when Chief Clark performed a frisk for officer safety and discovered marijuana in Fortune’s pocket. The second search occurred when, after having arrested Fortune, Chief Clark searched the vehicle in which Fortune had been a passenger and discovered a firearm.

Frisk

Here, the evidence presented at the hearing for the motion to suppress indicates that the search was reasonable and constitutional. Fortune does not dispute that the traffic stop was lawful, nor should he; the vehicle in which he was a passenger was traveling in the wrong direction on a one-way street, which was clearly a traffic violation. Chief Clark observed the traffic violation; therefore, he had reason to stop the vehicle. Chief Clark testified at the suppression hearing about the frisk resulting in the discovery l9of marijuana in Fortune’s pocket. He stated that after making the traffic stop he approached the passenger side where Fortune was seated and noticed that Fortune appeared nervous. He explained:
Question: ... what was he doing that you would characterize as looking extremely nervous?
Answer: Fidgeting, moving around. And it had me uncomfortable because, again, I’m by myself on the back side of campus on a one-way street meeting them coming out the wrong way, and two of them and one of me.
Question: Okay. And so you did ask the passenger to exit, correct?
Answer: I sure did.
Question: And who — who was the passenger?
Answer: Mr. Fortune
Question: And upon his exiting the vehicle, what did you do?
Answer: I advised Mr. Fortune that for my safety and his safety, I was going to do a frisk on him ‘cause he was extremely nervous. And — and I asked him for — I had both to present me I.D., identification. And at the time he pulled his identification out, he — he informed me that he had some — he said, quote, weed, in his — in his pocket, as I was about to search him, that was for his personal use.
Fortune also testified at the suppression hearing. He explained that he was not fidgeting, but trying to locate his identification and putting out a cigarette in the ashtray. His version of the frisk and discovery of the marijuana in his pocket differs from that of Chief Clark. Fortune testified, “He [Chief Clark] — he had frisked me and he got to the back — back of my pockets and he pulled out some marijuana and he asked me what it was and I told him it was National Smoke Day and that’s why I had it.”
110We find that it was reasonable for Chief Clark to suspect that he was in danger and subsequently frisk Fortune. As he articulated through his testimony, he was outnumbered by the two occupants of the vehicle, he was stopped on the back side of the campus — presumably out of sight, and the passenger was acting nervous and fidgeting. It was not improper for him to frisk Fortune in the interest of safety. According to Chief Clark, Fortune *1008 volunteered that he had marijuana on his person. At that point Chief Clark had probable cause to arrest Fortune and to search him incident to arrest. The trial court obviously found Chief Clark to have been credible and put great weight on his version of the events that night. This court is not in a position to reweigh the evidence or reassess the credibility of the witnesses, and we give the trial court great deference. Therefore, we find the frisk and seizure of marijuana from Fortune’s pocket to have been constitutional. The trial court did not err in denying the motion to suppress the evidence obtained from this search.

Vehicle Search

In order to determine whether the search conducted on the vehicle in the case sub judice was a valid search, we first must assess whether it falls under the exception to the warrant requirement as a valid inventory search. To do so we must consider the facts of the case in light of the factors as set forth in LaRue, supra, that are significant in determining that a so-called inventory search was merely subterfuge. These factors include whether (1) formal impoundment procedures were not followed; (2) the search was conducted “in the field”; (3) a tow truck was not called before commencing |nthe search; (4) the car owner was not asked for his consent to the search, if his car contained valuables, if he would waive an inventory search, or if he could make arrangements to have someone pick up the vehicle. It is unclear whether or not formal impoundment procedures were followed here. Chief Clark mentioned impoundment in his testimony when describing the procedure for inventory searches, but was not further pressed about the procedures employed on the night in question. The search was conducted “in the field.” It is unclear whether a tow truck was called before commencing the search. It is unclear whether the car owner was asked for his consent to the search, if his car contained valuables, if he would waive an inventory search, or if he could make arrangements to have someone pick up the vehicle. Chief Clark stated that upon viewing the vehicle’s registration, he was uncertain about who actually owned the vehicle. This could have accounted for the lack of questioning on the topic. What is clear here is that according to Chief Clark, only items he deemed as contraband were logged. He testified:
Question: I’m saying if there was something in the backpack that was not illegal, would you have listed that on the inventory form?
Answer: Uh, no.
[[Image here]]
Question: All right. So there is information about the vehicle and why it’s being towed, but you’re not listing on that form what you found in the vehicle. Right?
Answer: No.
Question: No, that’s not right, or no, it’s not listed?
Answer: It’s not listed.
11?This goes against the nature of an inventory search, which is done for the purpose of preserving a car owner’s property and protecting the police against claims of lost or stolen property. An inventory search may not be used as a subterfuge for rummaging through an arrestee’s vehicle without a warrant for the primary purpose of seizing evidence. From the limited testimony adduced at the suppression hearing, we cannot conclude that this was a valid inventory search.
However, while the search was not a valid inventory search, it was a valid search incident to arrest. See Chimel v. California, supra. As previously described, another exception to the warrant *1009 requirement is if a search is conducted incident to an arrest in the wingspan or lunge space of an arrestee in an effort to locate weapons or evidence. The purpose behind this exception is to promote officer safety and to prevent the destruction of evidence. Because the vehicle was in Fortune’s wingspan when he was arrested, the search of the vehicle resulting in the discovery of the firearm was a constitutional search incident to arrest. Thus, the trial court did not err in denying the motion to suppress in regard to either search.
Errors Patent
Pursuant to La. C. Cr. P. art. 920, we have examined the record and we note the presence of three errors patent regarding sentencing. After Fortune entered pleas of guilty to all three charges, the trial court sentenced him as follows:
On the illegal carrying of a weapon on school grounds, one year at hard labor, credit for all time served. On the possession or introduction of contraband into a penal institution, a fine of a | ^thousand dollars ($1,000.00) and costs of court, in default, to serve six months in the parish jail, subject to public works; additionally, one year at hard labor. The hard labor is suspended, you’re placed — no excuse me. Five years at hard labor, all but one year of the hard labor sentence is suspended and you’re placed on supervised probation for five years. The probation is to begin upon your release from incarceration. That one year is concurrent with the one year on the illegal carrying of a weapon. That is the same sentence on the possession of marijuana with intent to distribute.
First, when the trial court handed down Fortune’s sentence for possession of marijuana with intent to distribute, it stated that it was issuing the same sentence as it had ordered for Fortune’s conviction for possession or introduction of contraband into a penal institution. This is unclear. The trial court should have clearly articulated the precise sentence for each individual violation. Therefore, we find that for the charge of possession of marijuana with intent to distribute Fortune is sentenced to five years of imprisonment at hard labor, all but one year suspended, five years of probation beginning upon his release from incarceration, and a $1,000.00 fine plus court.
Second, La. R.S. 14:402 governs the sentence for possession or introduction of contraband into a penal institution. It does not allow for the imposition of a fine, although the trial court assessed Fortune with a $1,000.00 fine as part of its sentence for this conviction. Thus, Fortune’s sentence for possession or introduction of contraband into a penal institution is amended to delete the fine.
Third, for possession of marijuana with intent to distribute Fortune was sentenced to pay a $1,000.00 fine as well as court costs, and “in default, |14to serve six months in the parish jail, subject to public works.” However, an indigent defendant may not be subjected to imprisonment because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991); State v. Nelson, 44,762 (La.App.2d Cir.10/28/09), 25 So.3d 905. A defendant’s claim of indigence in such situation may be discerned from the record. State v. Williams, 484 So.2d 662 (La.1986). The record shows that Fortune was indigent: he was represented at trial by the indigent defender’s board and represented on appeal by the Louisiana Appellate Project. Accordingly, the defendant’s portion of his sentence imposing six *1010 months in parish jail, in lieu of payment of the fíne and court costs is vacated.
Conclusion
For the foregoing reasons, Robert Earl Fortune’s conviction and sentence are amended, and as amended, are affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.