PITMAN, J.
| ¶A jury convicted Defendant Michael L. Percy of the responsive verdict of unauthorized entry of a place of business. The trial court sentenced Defendant to the maximum sentence of six years at hard labor and fined him $1,000, in default of which he would serve 60 days in jail. Defendant now appeals his conviction and sentence. For the following reasons, we affirm Defendant’s conviction and affirm his sentence as amended.

FACTS

Defendant was charged with simple burglary in violation of La. R.S. 14:62 and possession with intent to distribute Schedule I controlled dangerous substance, i.e., marijuana, in violation of La. R.S. 40:966(A)(1).
At trial, Jamal Raman testified that he is the owner of H & S Grocery, which is located at 4001 Hollywood in Shreveport. Mr. Raman explained that H & S Grocery is an enclosed structure that is approximately 2,000 square feet with walls that are “probably around six feet, seven feet high.” He stated that the building has three doors which are locked when the store is not open for business. He testified that, in December 2012, the store was operated from 9 a.m. to 8 p.m. He explained that his store has been burglarized many times, so he had a surveillance system, an alarm, a caged door and a cinder block wall installed. Mr. Raman testified that, on the night of December 18, 2012, and the morning of December 19, 2012, the alarm system at H & S Grocery was triggered three times during the hours the store was closed. When he arrived at H & S Grocery on the morning of December 19, 2012, he observed that the cinder block wall had been completely knocked down and that approximately $7,000 worth of cigarettes, alcohol, lighters and other items were missing from inside the 12store. He testified that he met with Shreveport Police Ofe. Chris Lee and that they viewed the surveillance video from the previous evening. Mr. Raman stated that he recognized the person on the video as a regular customer, but did not know the person’s name. He explained that he received information about the person on the video after offering a $500 reward and that he gave that information to the police. Mr. Raman identified Defendant as the person on the surveillance video.
Ofc. Lee testified that he responded to an alarm at 4001 Hollywood on December 19, 2012. He explained that, upon arrival, he noticed a hole in the back wall of the store and then made contact with Mr. Ra- *186 man. Ofc. Lee stated that he and Mr. Raman noted the merchandise missing from the store and then watched the surveillance video. He testified that he took photographs of the surveillance video with his phone so that he could share the photos with other detectives. Ofc. Lee identified Defendant as the person in the surveillance video.
Det. Angie Wilhite of the Shreveport Police Department testified that she worked on the follow-up investigation on December 20, 2012. She explained that she and other officers used the information Mr. Raman had gathered to determine the identity of the person on the surveillance video and, after talking to people in the neighborhood, they learned of a man named Michael who lived at 3935 Miles Street with his girlfriend, Daphne Griffin. She stated that they contacted Ms. Griffin at her place of work and Ms. Griffin gave them permission to search her residence at 3935 Miles Street. She further stated that she and the other officers went to 3935 Miles Street, took Defendant into custody, performed a protective sweep and then | ^conducted a search of the residence. Det. Wilhite explained that they found cigarettes, lighters and alcohol in the residence that matched the description of the items taken from H & S Grocery. She also testified that they found a sledgehammer with paint on it that matched the paint color on the exterior of H & S Grocery, along with marijuana and flavored blunt rollers, inside the residence.
Cpl. Brian Lauzon of the Shreveport Police Department testified that he also responded to 3935 Miles Street on December 20, 2012. He explained that he performed the initial protective sweep of the house and that, while not involved in the search of the house, he did observe marijuana on a table in the back bedroom. Lt. Carl Townley of the Caddo Parish Sheriffs Office testified as an expert in the investigation of narcotics and possession with intent to distribute narcotics. Lt. Townley testified that the substance collected from 3935 Miles Street was marijuana that appeared to be packaged for resale purposes. ,
A unanimous jury convicted Defendant of the responsive verdict of unauthorized entry of a place of business, in violation of La. R.S. 14:62.4, and acquitted him of the drug charge.
The trial court sentenced Defendant to the maximum sentence of six years at hard labor and fined him $1,000, in default of which he would serve 60 days in jail.
Defendant appeals his conviction and sentence.

\ ¿DISCUSSION

Sufficiency of the Evidence

In his first assignment of error, Defendant argues that the evidence presented at trial was insufficient to prove that he committed unauthorized entry of a place of business. Defendant contends that the photographs used to identify him were cell phone photographs taken of the surveillance video and were of poor quality. He argues that there was no evidence linking the sledgehammer with white paint on it found at 3935 Miles Street to the paint on the wall of H & S Grocery. He also alleges that the testimony of Mr. Raman that the wall of H & S Grocery was “probably” six feet in height is -not sufficient to prove that the wall was at least that height, a requirement contained in La. R.S. 14:62.4.
The state argues that the evidence presented at trial was sufficient to sustain Defendant’s conviction of unauthorized entry of a place of business. The state contends that Mr. Raman’s testimony regard *187 ing the height of the walls of H & S Grocery was sufficient to prove that the business presented a barrier of at least six feet. The state also contends that Mr. Raman’s testimony that the person on the surveillance tape was a regular customer of H & S Grocery, his in-court identification of Defendant and Ofc. Lee’s testimony that Defendant was the person in the surveillance video were all sufficient to identify Defendant as the person who intentionally entered H & S Grocery during closed hours without authority.
The standard of appellate review for a sufficiency of the evidence claim is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential |selements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992); State v. Smith, 47,983 (La.App.2d Cir.5/15/13), 116 So.3d 884. See also La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert, denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A reviewing court may not impinge on the fact finder’s discretion unless it is necessary to guarantee the fundamental due process of law. Id. The appellate court does not assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
When a defendant claims that he was not the person who committed the crime, the Jackson rationale requires that the state negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047, citing State v. Weary, 03-3067 (La.4/24/06), 931 So.2d 297, and State v. Neal, 00-0674 (La.16/29/01),6 796 So.2d 649. Positive identification by only one witness is sufficient to support a defendant’s conviction. Id.
Thus, in order for Defendant’s convictions to be upheld, the record must establish that the state proved beyond a reasonable doubt all of the essential elements of unauthorized entry of a place of business. This offense was committed on or about December 18 and 19, 2012. On the dates of the offense, La. R.S. 14:62.4(A) defined unauthorized entry of a place of business as follows:
Unauthorized entry of a place of business is the intentional entry by a person without authority into any structure or onto any premises, belonging to another, that is completely enclosed by any type of physical barrier that is at least six feet in height and used in whole or in part as a place of business.
The knocking down of the exterior cinder block wall in order to enter the store demonstrates that Defendant intended to enter H & S Grocery. Mr. Raman testified he is the owner of H & S Grocery and that Defendant was not authorized to be inside H & S Grocery during the hours the store was closed for business. Mr. Raman’s testimony also demonstrated that H & S Grocery is a place of business, i.e., a small grocery store, that is a completely enclosed structure. The state proved the height of the walls of H & S Grocery with *188 Mr. Raman’s testimony that the walls are “probably around six feet, seven feet high.” Therefore, the state proved the essential elements of unauthorized entry of a place of business beyond a reasonable doubt.
As proof of Defendant’s identity as the perpetrator, the state introduced two color photographs of the perpetrator’s face taken from the surveillance video. At trial, Mr. Raman stated that the person in the photographs was a regular customer of H & S Grocery and identified | ^Defendant as the person in those photographs. Defendant’s presence at trial also afforded the jury the opportunity to compare the appearance of the person in the photographs to that of Defendant. Therefore, the state proved Defendant’s identity as the perpetrator beyond a reasonable doubt.
Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that the state presented sufficient evidence at trial to establish the essential elements of unauthorized entry of a place of business beyond a reasonable doubt. The evidence presented at trial was clearly sufficient to sustain the conviction. Therefore, we find that this assignment of error lacks merit.

Motion for Continuance of Trial, Exclusion of Evidence

In his second assignment of error, Defendant argues that the trial court erred in denying his motion to continue trial. Defendant contends that this motion should have been granted because he only received photographs of the surveillance video days before trial and, therefore, did not have sufficient time to review them and obtain an expert for the video and photographs prior to trial.
The state contends that it fulfilled its continuing duty of discovery, arguing that the police reports put Defendant on notice of the existence of the photographs months before trial and that Defendant received the actual photographs the week prior to trial.
The decision to grant or deny a motion to continue rests within the discretion of the trial court, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. La. C. Cr. P. art. 712; State v. Strickland, 94-0025 (La.11/1/96), 688 So.2d 218; State v. Gipson |8 28,113 (La.App.2d Cir.6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402.
Defendant filed a motion for discovery on January 3, 2013, and the state filed a bill of information on January 16, 2013. On January 16, 2013, the state responded to Defendant’s discovery request with copies of police reports, a permission to search form and Defendant’s criminal history. On March 27, 2013, Defendant filed a motion for continuance of the trial scheduled for April 1, 2013, arguing that the state had not provided him with “a lab report, photos used to allegedly identify the defendant, or the video surveillance from the victim’s place of business.” On that same day, Defendant filed a motion to exclude the photos, the surveillance video and the drug evidence at trial.
On March 28, 2013, the state made another response to discovery, including photographs taken at 3935 Miles Street and a copy of the lab report showing that the drugs recovered from that residence were marijuana. At the March 28 hearing on Defendant’s motion to suppress, defense counsel reurged the motion to continue, arguing that they had just received identification information, i.e., photographs of the surveillance video. The state clarified that the surveillance video was corrupted and could not be viewed, so the photos taken of the surveillance video were the *189 only available evidence. Although defense counsel requested a continuance, Defendant stated that he wanted to go to trial, saying, “I want that. I do. I want my 12 jurors. That’s what I want.” The trial court denied the motion for a continuance over defense counsel’s objection.
On April 1, 2013, the jury was selected, and the state responded to ^discovery again by providing Defendant with a copy of the surveillance video. On April 2, 2013, defense counsel reurged the motion for continuance, requesting time to obtain an expert to review the surveillance video. The state explained that, although it previously believed the video was corrupted, it obtained a viewable copy the previous day and intended to introduce the video as evidence. A Daubert hearing was also conducted of an expert witness in paint identification, whom the state planned to call to testify regarding the paint on the sledgehammer found at 3935 Miles Street as matching the paint on the exterior of H & S Grocery. Defense counsel again requested a continuance due to the state’s late responses to discovery, specifically regarding the photographs, surveillance video and lab reports. Upon becoming fully aware of the timing of the disclosure of the evidence, the trial judge suppressed the crime lab report on the paint samples, the expert witness testimony and the surveillance video, but did not suppress the photographs taken of the surveillance video.
Although the state’s late disclosure of the photographs was not optimal, the disclosure of the photos the week prior to trial did not deprive Defendant of a fair trial. The discovery materials that were timely provided to Defendant, i.e., the police reports, demonstrated that the state possessed photos that were allegedly of Defendant. Furthermore, the trial court suppressed the evidence that formed the basis of Defendant’s argument for a continuance. Therefore, the trial court did not abuse its discretion when denying the motion to continue.
Accordingly, this assignment of error is without merit.

Motion to Suppress

11 pin his third assignment of error, Defendant argues that the trial court erred in denying his motion to suppress evidence. Defendant contends that the sledgehammer with white paint recovered from 3935 Miles Street should have been excluded from use at trial because Defendant refused to consent to the search of that location. Defendant alleges that he was an occupant of 3935 Miles Street and that he indicated to Ms. Griffin that he did not want to allow the police officers to search the residence. He contends that it was apparent from the circumstances that he refused to consent to the search of the house and that the police officers never asked for his consent.
The state contends that Ms. Griffin gave written consent to search the residence and that Defendant did not have authority to repudiate the consent provided by Ms. Griffin.
The Fourth Amendment of the United States Constitution and Article I, Section 5, of the Louisiana Constitution prohibit unreasonable searches and seizures and provide that a warrant may not be issued without probable cause. A war-rantless search and seizure is presumed to be unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Stephens, 46,304 (La.App.2d Cir.6/22/11), 71 So.3d 462, citing State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Talbert, 449 So.2d 446 (La.1984); and State v. Ledford, 40,318 (La.App.2d Cir.10/28/05), 914 So.2d 1168. A valid consent search is an exception to the warrant *190 requirement. Id., citing State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082; and State v. Owens, 480 So.2d 826 (La.App. 2d Cir.1985), writ denied, 486 So.2d |11 748 (La.1986), cert, denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986).
In Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), the United States Supreme Court considered the reasonableness of a warrantless search of a home when one resident gives consent to search and another resident refuses to give consent. In that case, Mrs. Randolph called police complaining that her husband had taken their son away. When the police arrived at the Randolphs’ home, Mrs. Randolph told police that Mr. Randolph used cocaine and that there were drugs inside the house. A police officer asked Mr. Randolph for permission to search the home and he “unequivocally refused.” The police officer then asked Mrs. Randolph for consent to search, and she gave consent and led the officers inside the house to where the drugs and drug paraphernalia were located. The police then stopped the search and obtained a warrant. Mr. Randolph was indicted for possession of cocaine, and he moved to suppress the evidence as a product of a warrantless search. The trial court denied the motion and ruled that Mrs. Randolph had common authority to consent to the search. The Court of Appeals of Georgia reversed and was affirmed by the Supreme Court of Georgia. The United States Supreme Court granted certiorari and held that “a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.” The Court also noted “if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant’s permission does not suffice for a reasonable search, whereas the | ^potential objector, nearby but not invited to take part in the threshold colloquy, loses out.”
Very recently, in Fernandez v. California, - U.S. -, 134 S.Ct. 1126, 188 L.Ed.2d 25 (2014), the United States Supreme Court elaborated on co-tenant consent. In that case, police were called to the scene of an armed robbery and received information that the perpetrator was in a nearby apartment building. The officers then observed a man run into the apartment building and heard screaming coming from inside. The officers knocked on the door on the unit where the screaming was coming from, and a bleeding woman who was holding a baby answered the door and said she had been in a fight. When the police asked the woman to step outside, the defendant came to the door and told police that they did not have the right to come inside. The officers placed the defendant under arrest on suspicion of battery. An hour later, the officers returned to the apartment unit, and the woman gave them written and oral consent to search. The officers found gang paraphernalia, a knife, clothing worn by the robbery suspect and ammunition. The defendant was charged with robbery and other crimes. The defendant moved to suppress the evidence found in the apartment, and the trial court denied the motion. The California Court of Appeal affirmed, and the California Supreme Court denied the petition for review. The United States Supreme Court granted certiorari, affirmed the lower courts’ decisions and found that Randolph, supra, does not apply when the objecting occupant is absent due to a lawful detention or arrest when another occupant consents to a search. The Fernandez Court also explained that Randolph, supra, “applies only when the *191 objector is standing in the door saying ‘stay out’ when officers 113propose to make a consent search.”
At the motion to suppress hearing in the case sub judice,[1] Det. Wilhite testified that she was present when the search of 3935 Miles Street was executed. She testified that the officers made contact with Ms. Griffin, who gave written consent to search the house and also provided police officers with her keys to enter the house. Det. Wilhite testified that Defendant was inside the house when the officers arrived and that he did not object to the search. She stated that Ms. Griffin was the only leaseholder on the house, but that it did appear Defendant was staying there. Det. Wil-hite further stated that Ms. Griffin was “wishy-washy” on whether Defendant lived with her. Ofc. Bassett testified at this hearing[2] that he was present at 3935 Miles Street when the search was executed and that male clothing was found inside the residence. He further testified that he never heard Defendant directly tell the police officers not to search the house. He stated that Defendant told Ms. Griffin, “Baby, we don’t want them searching.” Ofc. Bassett explained that Defendant gave him the impression that Ms. Griffin “was in charge, not him.” He also testified that Ms. Griffin was “on the fence” about whether Defendant lived with her and that she was “pretty vague.”
The trial court noted that it had reviewed Georgia v. Randolph, supra, and distinguished the case sub judice as follows:
In this case, at least as far as the testimony is concerned, we’ve got Ms. Griffin who signed a consent form, as well as | T 4told the officers that they could enter the residence and search. She provided a key to them. The only testimony is that-at least from the officer that was on the stand, the officer indicated that all Mr. Percy said was, Baby, we don’t want them searching.
Randolph has stated that there must be an express refusal to search. I don’t find ‘baby, we don’t want them searching1 is an express refusal to search, and therefore, the Motion to Suppress is denied.
To decide if the police lawfully seized evidence from inside 3935 Miles Street, it must be determined if Defendant had the right to refuse consent to search and, if so, whether his actions before and during the search amounted to a refusal of consent to search. Although Ms. Griffin, the only named lessee on the lease of 3935 Miles Street, was “wishy washy” as to whether Defendant lived with her, Det. Wilhite testified that it appeared Defendant lived in the residence, and Ofc. Bassett stated that male clothing was found in the bedroom. The testimony presented at the motion to suppress hearing suggests that Defendant was at least an overnight guest at 3935 Miles Street and, therefore, may have had the authority to refuse consent to search. However, at trial, Defendant relied upon the arguments that his name was not on the lease and that he had no connection to 3935 Miles Street in an attempt to shift the blame away from him.
Although Defendant may have had the authority to refuse consent to search, the evidence presented at the motion to suppress hearing demonstrates that he did not exercise that authority. Det. Wilhite testified that Defendant was inside the residence when the police arrived, but did not respond when they knocked on the door. She explained that Ms. Griffin then gave *192 the officers her keys to the residence and consented to a search. Ofc. Bassett testified that Defendant never informed the officers that he [^refused to consent to search; instead, he told Ms. Griffin, “Baby, we- don’t want them searching.” This comment to Ms. Griffin is not an express refusal of consent as contemplated by Randolph, supra. Defendant was not “standing in the door saying ‘stay out’ when officers propose[d] to make a consent search.” Fernandez, supra. As a person who was “nearby but not invited to take part in the threshold colloquy,” Defendant “loses out.” Randolph, supra.
Because there was no “express refusal of consent” by Defendant as required in Randolph, supra, the trial court did not err in denying his motion to suppress. Accordingly, this assignment of error is without merit.

Excessive Sentence

In his fourth assignment of error, Defendant argues that his sentence is unconstitutionally excessive. Defendant alleges that sentencing was extremely brief and that the trial court did not order a presentence investigation report. He also contends that the trial court did not refer to any of the La. C. Cr. P. art. 894.1 factors and should not have imposed the maximum sentence.
The state argues that Defendant has an extensive criminal record; and, therefore, the maximum sentence is not excessive.
In this case, Defendant made an oral motion to reconsider sentence at the sentencing hearing and only raised a bare claim of excessiveness and not any specific reason why the sentence was excessive. The Louisiana Supreme Court explained in State v. Mims, 619 So.2d 1059 (La.1993), as follows:
Under Article 881.1 the defendant must file a motion to reconsider and set forth the “specific grounds” upon which the motion is based in order to raise an objection to the sentence on | ^appeal. However, in order to preserve a claim of constitutional excessiveness, the defendant need not allege any more specific ground than that the sentence is excessive. If the defendant does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then the defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court consider the bare claim of excessiveness. Article 881.1 only precludes the defendant from presenting arguments to the court of appeal which were not presented to the trial court at a point in the proceedings when the trial court was in a position to correct the deficiency.
A sentence is excessive and violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside absent a showing of abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. State v. Adger, 35,111 (La.App.2d Cir.9/26/01), 797 So.2d 146, citing State v. Soco, 441 So.2d 719 (La.1983); and State v. Walker, 29,877 (La.App.2d Cir.10/29/97), 702 So.2d 18.
*193 La. R.S. 14:62.4(B) states that whoever commits the crime of unauthorized entry of a place of business shall be fined not more than $1,000 or imprisoned with or without hard labor for not more than six years, |17or both. The trial court sentenced Defendant to six years at hard labor and fined him $1,000, in default of which he would serve 60 days in jail, and ordered that the sentence run concurrently with any other sentence Defendant was serving. The trial court stated that the maximum sentence is “extremely lenient” for Defendant’s actions.
Defendant destroyed an exterior wall of H & S Grocery in order to enter the building. This is among the most extreme and destructive methods of unauthorized entry of a business. The evidence presented at trial also suggests that Defendant may have taken merchandise from the store valued at thousands of dollars, including alcohol, cigarettes and lighters. Further, Defendant’s criminal record, which began in 1973 and included numerous prior offenses for burglary, suggests that the sentence is appropriate.
Based on the law and the facts of the case, the sentence is not out of proportion to the severity of the crime and does not shock the sense of justice. Therefore, we conclude that the trial court did not abuse its wide discretion in sentencing Defendant, and the sentence is not constitutionally excessive. Therefore, this assignment of error lacks merit.

ERROR PATENT

At trial, Defendant was represented by the Indigent Defender’s Office; and, on appeal, he was represented by the Louisiana Appellate Project. The trial court fined Defendant $1,000 or, in default thereof, sentenced him to 60 days in jail.
An indigent defendant may not be subjected to imprisonment because he is unable to pay a fine that is part of his sentence. State v. Fortune, 46,522 (La.App.2d Cir.9/21/11), 72 So.3d 1000, citing Bearden v. |18 Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991); and State v. Nelson, 44,762 (La.App.2d Cir.10/28/09), 25 So.3d 905. A defendant’s claim of indigence may be discerned from the record. Id., citing State v. Williams, 484 So.2d 662 (La.1986). Where a defendant is represented by the Indigent Defender’s Office or the Louisiana Appellate Project, the court may conclude that the defendant is indigent. Id.
Accordingly, Defendant’s sentence is amended to delete the 60 days of default imprisonment time.

CONCLUSION

For the foregoing reasons, the conviction of Defendant, Michael L. Percy, is affirmed, and his sentence is affirmed as amended.
CONVICTION AFFIRMED. SENTENCE AFFIRMED AS AMENDED.

. Ms. Griffin was not subpoenaed for this hearing.

. Ofc. Bassett testified only at the motion to suppress hearing. He did not testify at trial.