DREW, J.
_JjAt jury trial, Katrina Grimble was convicted of first degree robbery. La. R.S. 14:64.1. She was sentenced to 15 years at hard labor, but without denial of benefits. The state filed a bill, charging her as a second-felony habitual offender. She was adjudicated as such and sentenced to 20 years at hard labor, again without noting the denial of certain benefits.
Grimble appeals, claiming insufficiency of evidence and a flawed adjudication. She is partially correct. We affirm the conviction. We vacate the habitual offender adjudication and enhanced sentence, and remand.
FACTS
On the morning of November 20, 2013, Betty Jones, a teller at Bastrop’s Richland State Bank, was robbed. She testified:
• at about 9:20 a.m., the second customer of the day approached her teller window and slid an envelope to her, on which was written a note instructing Jones to “put the money in the envelope”;
• she tried to turn off her computer screen, but stopped when the robber made a gesture toward a pants pocket;
• she assumed the robber was reaching for a weapon;
• she put $3,000.00 in the envelope and gave it to the robber, who left;
• she identified photographs from the bank’s security video;
• she told a bank officer, Dewey Jones, that she had been robbed;
• she could not initially determine the robber’s gender, and at first believed the person was a male, based upon the clothing worn; and
• she gave the officers a description of the robber’s clothing, including a dark colored “toboggan cap” and a dark plaid jacket.
Erin Williams, another bank employee, testified:
• she was working in her office across the lobby from Jones’ teller window on the morning of the robbery;
b* she observed the robber, whom she did not recognize as a regular customer, enter the bank and approach the teller;
• she noted that the transaction was taking longer than normal, so she stood up to check out the situation;
• she went to the teller as the person left, making eye contact with her;
• she initially assumed the robber was a male;
• the robber wore a knit hat, plaid hoodie, and pants, all dark;
• the robber’s clothing was loose and baggy; and
• she identified, at trial, the defendant as the robber.
Dewey Jones, a bank vice-president, testified:
• he saw the robber enter and leave the bank;
• he identified a photo of the robber entering the bank;
• he went to the front door, followed by Williams;
*501 • the robber turned left and headed toward Cypress Avenue, then turned and looked at him and Williams, again gesturing toward a pants pocket, as if reaching for a weapon;.
• he locked the door; and
• $3,100.00 had been stolen.
Marvin Holmes, Bastrop Police Department detective, testified:
• he and Assistant Chief Bubby McDuffie responded to the robbery;
• he got a photo of the robbery suspect from the bank’s security video;
• the photo was provided to other officers and circulated in the area;
• Williams described the robber as a black male, between the ages of 40 and 45, but later she had doubts about the robber’s gender; and
• Dewey Jones also initially described the robber to officers as a male, but later felt that he might have been wrong.
IsBastrop Police Dept. Captain Anthony Evans testified:
• He responded to the robbery dispatch and began canvassing the area, as reports revealed that the robber had fled on foot;
• he came in contact with a woman, later identified as Katrina Grimble, approximately 350 yards away from the bank;
• she was wearing a light-colored top and a bun braid in her hair;
• she told him that she saw a person wearing a dark plaid jacket running toward Bastrop Feed and Seed; and
• he took no notes and did not get the woman’s name.
Later that first day, an anonymous caller advised the police that the person in the photograph was not a male, but was a female named Katrina Grimble. Officers proceeded to Grimble’s last known address. Her mother was there and provided another address, where the defendant was found.
Det. Holmes was notified and proceeded to the station, where he advised her of her rights as per Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant gave a free and voluntary statement, stating:
• on the day of the robbery, she went to Subway at 7:00 a.m.;
• she then met with an Atmos representative at her home at 9:20 a.m.;
• she gave a friend cash to get a TV off layaway at 11:15 a.m.; and
• from 11:15 a.m. to 3:00 p.m., she was at her home waiting for a Sudden-Link cable company representative.
All Holmes could verify was the cash paid to the pawn shop.
A search of Grimble’s home came up empty.
Capt. Evans testified:
• when he entered the interview room, he recognized Grimble as the woman that he had spoken with near the bank earlier in the day;
• he had previously viewed one security photograph of the robber, but did not identify the robber as Grimble;
[i« he returned to the area where he had encountered Grimble, where he discovered a black and gray plaid coat, a knit cap, and a stocking cap inside some bushes on North Odom Street;
• he returned to the station and told the defendant what he had found;
• she denied that the clothing was hers;
• Holmes took the clothing to the Crime Lab; and
• Holmes obtained a DNA swab from Grimble, with her consent.
*502 Dr. Candace Jones, a forensic DNA analyst, testified:
• she compared the known sample of DNA with samples from the coat, the knit cap, and the stocking cap;
• she found that the probability of finding the same DNA profile from a randomly selected individual as being about 1 in 611 quintillion for the coat, 1 in 609 quintillion for the knit cap, and 1 in 1.28 quadrillion for the stocking cap; and
• this indicated that the defendant often wore those items.
Grimble was found guilty of first degree robbery. Motions for judgment notwithstanding the verdict and for new trial were denied, She was sentenced to 15 years at hard labor, without denial of benefits. A habitual offender bill of information was filed, charging the defendant as a second-felony habitual offender. With a new appointed lawyer, she admitted that she was the same person previously convicted of simple robbery and two counts of aggravated battery on January 8, 1991. After being adjudicated, Grimble was sentenced to 20 years at hard labor. The original sentence was not vacated. This appeal followed.

IsSufficiency

Our law on appellate review for sufficiency of the evidence is well settled.[1]
La. R.S. 14:64.1 defines first degree robbery as “the taking of anything of value belonging to another from the person of another, or that is in the immediate *503 control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon,” A “dangerous weapon” includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(A)(3). Direct ^testimony by the victim that he believed the defendant was armed, or circumstantial inferences arising from the victim’s immediate surrender of his personal possessions in response to the defendant’s threats, may support a conviction for first degree robbery. The state must prove that the defendant induced subjective belief in the victim that he was armed with a dangerous weapon, and that the victim’s belief was objectively reason- - able under the circumstances. State v. Thomas, 43,783 (La. App. 2 Cir. 1/14/09), 2 So.3d 1181, 1185; State v. Collier, 39,882 (La. App. 2 Cir. 8/17/05), 909 So.2d 654, 657-658. No weapon need ever be seen by the victim, or witnesses, or recovered by the police for the trier of fact to be justified in finding that in fact the defendant was armed with a dangerous weapon. State v. Collier, supra, at 657-658.
In order for this conviction to be upheld, all elements of first degree robbery must have been proven. This the state has done.
The testimony of Betty Jones established:
• the robber, dressed in loose clothing and wearing a cap; passed her a robbery note, demanding money;
• the threat- of a dangerous weapon was conveyed by the robber moving a hand towards a pocket; and
• the robber took the bank’s cash from the teller.
Dewey Jones and Erin Williams, each of whom followed the robber outside the bank, observed the robber reach towards a pocket in a threatening gesture. They also believed the robber was reaching for a weapon.
|7As proof of the robber’s identity, the state introduced the testimony of Captain Anthony Evans, the expert testimony of Dr. Candace Jones,- video footage of the crime, and outside photographs taken from the bank’s security video.
At trial, Capt. Evans testified that he encountered Grimble approximately 350 yards from the bank shortly aftér the robbery, and that he later discovered a dark plaid jacket, dark knit cap, and a stocking cap near Grimble’s home. The testimony of Det. Holmes established that a photograph of the robber was circulated by police on the day of the robbery, that an anonymous caller identified the robber as Katrina Grimble, and that he was unable to confirm Grimble’s alibi. The testimony of Dr. Jones established that the DNA samples taken from the clothing discovered 'near Grimble’s home matched her known DNA sample, indicating that Grimble often wore those items of clothing.
The DNA evidence is absolutely compelling. The clothing found immediately after the robbery, very near the venue of the crime, was clearly the clothing worn by the robber. The defendant- denied that the clothing was hers; science puts the lie to that claim.
The initial gender assumptions of two witnesses just means that the robber’s deception was effective, and that many people think of a robber as being male.
Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that the state presented sufficient evidence at trial • to establish the essential elements of first degree robbery beyond a reasonable doubt, negating any reasonable probability *504 of misidentification. The evidence was sufficient to sustain the conviction.
| Adjudication
On review, Grimble argues that, while the trial court did have a brief discussion of her desire to admit her identity as the same person previously convicted in Docket No. 89-2755, the trial court did not sufficiently advise her of her rights. Grim-ble asserts that, because the trial court failed to advise her of her rights, the habitual offender adjudication must be set aside and the matter must be remanded to the trial court. In response, the state argues that the trial court and the defense had before them the entire record of Grimble’s prior conviction. The state further argues that Grimble was advised that if she admitted to being the person who was previously convicted, the state did not have to present proof that she was the same person previously convicted.
Before accepting a defendant’s admission that he is a multiple offender, the trial judge must specifically advise the defendant of his right to a formal hearing, his right to require the state to prove his identity as a multiple offender, and his right to remain silent. A trial court’s failure to properly advise a defendant of his rights under the habitual offender law constitutes patent error on the face of the record and requires that the habitual offender’s adjudication be vacated. State v. Robinson, 46,091 (La. App. 2 Cir. 4/20/11), 63 So.3d 1113, 1125.
At the habitual offender adjudication on January 7, 2016, Grimble’s attorney indicated that Grimble did not deny that she was the same person who pled guilty in 1991. The trial court asked her if she understood what her attorney had said, and that the state had filed a habitual offender petition alleging that she was the person previously convicted. She then admitted that she was the same person convicted in the prior case.
InGrimble was not advised of her right to silence prior to her guilty plea. This is error patent and reversible error. Her habitual offender adjudication and enhanced sentence must be vacated, and the case remanded.
While a trial court is not required to impose an original sentence for the underlying conviction, the trial court is required to vacate any original sentence that is imposed prior to imposing the enhanced sentence as a multiple offender. La. R.S. 15:529.1(D)(3); State v. Pratt, 50,152 (La. App. 2 Cir. 12/30/15), 184 So.3d 816, 820.
The trial court did not vacate Grimble’s original sentence when it imposed the enhanced sentence on March 15, 2017. If the state again pursues an adjudication, and should the defendant be adjudicated as a habitual offender, the trial court is directed to vacate the defendant’s original sentence prior to imposing any enhanced sentence.
DECREE
The defendant’s conviction is affirmed.
The defendant’s initial 15-year hard labor sentence is vacated, for failure to note that all of the sentence must be served without benefits.
The defendant’s habitual offender adjudication is vacated.
The enhanced sentence for the adjudication is vacated.
The matter is remanded for further proceedings consistent herewith.
CONVICTION AFFIRMED; SENTENCE AND ADJUDICATION VACAT *505 ED; AND REMANDED FOR FURTHER PROCEEDINGS.

. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d 560 (1979); State v. Tate, 01-1658 (La. 05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Ward, 50,872 (La. App. 2 Cir. 11/16/16), 209 So.3d 228, 231. This standard, now legislatively embodied in La. C, Cr. P. art, 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder, Ward, supra; State v. Dotie, 43,819 (La. App. 2 Cir. 01/14/09), 1 So.3d 833, writ denied, 09-0310 (La. 11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of wit- ■ nesses or reweigh evidence. Ward, supra; State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. Ward, supra; State v. Eason, 43,788 (La. App. 2 Cir. 02/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09), 23 So.3d 913. The Jackson standard is applicable in cases involving both direct and circumstantial evidence, An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); Ward, supra; State v. Speed, 43,786 (La. App. 2 Cir. 01/14/09), 2 So.3d 582, writ denied, 09-0372 (La. 11/06/09), 21 So.3d 299.
When a defendant claims that he was not the person who committed the crime, the Jackson rationale requires that the state negate any reasonable probability of misidentifi-cation in order to carry its burden of proof. State v. Percy, 48,922 (La. App. 2 Cir. 4/9/14), 137 So.3d 184; State v. Hughes, 05-0992 (La. 11/29/06), 943 So.2d 1047; State v. Neal, 00-0674 (La. 6/29/01), 796 So.2d 649. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Nelson, 44,762 (La. App. 2 Cir. 10/28/09), 25 So.3d 905; Percy, supra; Neal, supra. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. Nelson, supra.