Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,260-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DARREN D. MCKEEVER                          Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 21CR32171

Honorable Amy Burford McCartney, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By:  Mary C. Hanes
      Bruce G. Whittaker

DARREN D. MCKEEVER                          Pro Se

CHARLES B. ADAMS                            Counsel for Appellee
District Attorney

ETHAN ARBUCKLE
Assistant District Attorney

* * * * *

Before STONE, THOMPSON, and HUNTER, JJ.

HUNTER, J., dissents with written reasons.

**THOMPSON, J.**

Darren McKeever appeals his conviction for indecent behavior with a juvenile and his resulting sentence of life imprisonment at hard labor without the benefit of probation or suspension of sentence as a fourth felony habitual offender. McKeever argues that his life sentence is excessive because the trial court failed to consider his struggles with substance abuse in mitigation at sentencing, and that he is not the worst of offenders. We disagree and affirm McKeever's conviction and sentence, and remand to the trial court with instructions to correct the minutes.

## FACTS

On January 13, 2022, Darren McKeever ("McKeever") was charged by bill of information with indecent behavior with a juvenile, a violation of La. R.S. 14:81(A)(1). A two-day trial commenced on March 23, 2022, and concluded on March 24, 2022, at which time McKeever was convicted by unanimous jury.

At the trial, the minor child victim, J.S., testified regarding an incident with McKeever that occurred when he was 13 years old. On November 14, 2021, J.S. was sexually violated by McKeever at his apartment complex, where he resided with his grandmother. J.S. testified that he walked to the apartment of a friend for dinner. J.S. left the apartment to go purchase soda from a man who sold them from another apartment on the other side of the apartment complex. J.S. claimed the man did not answer his front door, so he walked around the building to knock on his back window. J.S. explained that on his way around the building, he stopped to check his grandmother's mailbox. J.S. stated that when he got to the back of the building, McKeever forcibly grabbed him and pinned him against the wall. The record shows

that J.S. reported this incident to his mother, and he described McKeever appearing out of nowhere, "like a magician." J.S. described McKeever as very strong; he grabbed J.S. and pulled down his clothes. J.S. stated that McKeever was licking and kissing his face. J.S. tried to pull away, but he was pinned against the wall. J.S. stated that McKeever put his finger "up his bottom" and that the incident made him feel horrible.

Laverce Daughtry testified that she knew McKeever from the neighborhood. On the evening of the incident, Daughtry testified she was sitting in her car at the apartment complex with her brother. She observed J.S. come from across the street and go toward the mailboxes. She then saw J.S. walk around the building, and she saw McKeever follow J.S. behind the building. About 15 minutes later, she went inside her father's apartment in the complex to look out the window and see what McKeever and J.S. were doing. She observed McKeever standing with his pants down and the boy on his knees facing him. Daughtry testified that the boy had his mouth on McKeever's penis. Daughtry's son was also in the apartment, and she asked him to look out of the window and confirm what she believed she saw. Daughtry testified that her son confirmed her observation. She then rushed outside and told her brother, Sylvester Daughtry, still sitting in the car, to go get J.S.'s mother.

Sylvester Daughtry testified he was sitting in the car with his sister when he saw J.S. walk around the back of the building. He also observed McKeever follow J.S. Daughtry became concerned when McKeever and J.S. did not return. He testified that his sister went inside their father's apartment and returned five minutes later, telling him to go get J.S.'s mother

2

to tell her what happened.  Daughtry informed J.S.'s mother, who immediately called the police.

At the conclusion of the trial, the six-member jury found McKeever guilty as charged by a unanimous verdict.  On July 25, 2022, the State filed a multiple bill alleging McKeever was a fourth felony habitual offender.  On July 29, 2022, the State filed an amended multiple bill, alleging he was a fourth felony offender based on different predicate offenses.  On August 19, 2022, the State filed another amended multiple bill based on different predicate offenses – three convictions for obscenity on September 21, 2015, based on offenses occurring on the same date, April 8, 2012.

On August 28, 2022, at the habitual offender hearing, Louisiana Department of Corrections probation and parole officer, Russell Haynes, testified and verified that the 2015 obscenity convictions contained in the amended multiple bill matched their records of the obscenity convictions and subsequent parole supervision for McKeever, including his photo, birthdate, and social security number.  The photo of McKeever from the parole records was entered into evidence.  At the conclusion of the hearing, the trial court found McKeever to be a fourth felony habitual offender.

A Presentence Investigation Report (PSI) was requested at the conclusion of McKeever's trial.  The PSI detailed McKeever's extensive criminal history, including numerous sexual crimes involving children.  The record shows that McKeever was known in the Logansport area as a person who had committed sex offenses involving children in the past.

On September 26, 2022, the sentencing hearing was held, and the trial court considered McKeever's significant criminal history and noted that he was a "violent and sexually deviant person."  The trial court specifically

noted that McKeever has exposed his genitals to adult females and more than 20 children in the past 11 years. The trial court sentenced McKeever to serve life in prison without benefit of probation or suspension of sentence. McKeever's timely motion to reconsider sentence was denied.

## DISCUSSION

McKeever's sole assignment of error provides as follows:

**<u>Assignment of Error</u>: Darren McKeever's life sentence for indecent behavior with a juvenile as a fourth felony offender is excessive.**

McKeever claims that his life sentence for indecent behavior with a juvenile as a fourth felony offender is excessive, arguing the trial court failed to consider that his difficulties stem from a lifelong addiction to drugs and alcohol and the lack of proper mental health treatment for his addictions. McKeever argues that the trial court failed to link his criminal history to his untreated addictions. McKeever contends that his use of drugs and alcohol have caused him to lack inhibitions and commit crimes that are sexual in nature. However, he contends that he has made efforts to rehabilitate himself, including cessation of the use of drugs. McKeever concludes that his life sentence, the maximum possible, is excessive because he is not the worst of offenders. He requests this court vacate his life sentence and remand the matter for the imposition of a sentence within constitutional limits.

The law concerning excessive sentences is well-settled; claims are reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d

4

1065. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance. *Id.*

A sentence violates La. Const. art. I, §20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Efferson*, 52,306 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1153, *writ denied*, 18-2052 (La. 4/15/19), 267 So. 3d 1131. To constitute an excessive sentence, a reviewing court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. *Id.*; *State v. Griffin*, 14-1214 (La. 10/14/15), 180 So. 3d 1262. The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *Id.*; *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *Id.*

The Louisiana habitual offender law, contained in La. R.S. 15:529.1, provides, in pertinent part:

> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then the following sentences apply:
>
> (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.

5

Any sentence by the trial court for a habitual offender must fall within the sentencing requirements of the habitual offender statute. McKeever's life sentence, while the maximum available sentence, does fall within the statutory limits for this offense. La. R.S. 15:529.1 provides that when a person has been convicted of a felony, and subsequently commits additional felonies, that offender shall be subject to enhanced imprisonment sentences as set forth in the statute. It is only due to McKeever's extensive criminal history and prior felony convictions that he is exposed to these enhanced sentencing considerations.

We find that the trial court adequately considered the factors enumerated in La. C. C. P. art. 894.1 when sentencing McKeever to the maximum sentence as a habitual offender. McKeever has a long history of committing sexual crimes against victims often incapable of protecting or defending themselves. Specifically, in March 2011, McKeever pled guilty to an obscenity charge for exposing himself to a minor child and adults. In April 2012, he was again arrested for exposing himself to 15 adults and 20 children during a church carnival, ultimately leading to three obscenity convictions in 2015. The record shows that McKeever admitted to daily use of cocaine and weekly use of marijuana since age 17, and daily use of alcohol since age 18. The record shows that McKeever reported cessation of cocaine and marijuana, but admitted to continued use of alcohol.

Further, while it is the maximum sentence, the facts of this case establish that McKeever is indeed among the worst type of offenders for the particular crime of indecent behavior with juveniles. The jury clearly believed the testimony of the most recent minor victim, J.S., and the witnesses who described McKeever forcing his will upon the minor victim.

6

Indecent behavior with a juvenile is a serious crime, because it violates society's future and most valuable and vulnerable assets – children. McKeever had previously been convicted of the same crime, indecent behavior with a juvenile, as well as obscenity charges involving children victims. The record also reveals that McKeever was known in the community as a threat to children due to his behavior and predatory actions aimed at children.

We agree with the trial court's assessment of McKeever as a "violent and sexually deviant person." McKeever has demonstrated a continuous pattern of sexually violent crimes and felonies, which were continuing to escalate, leaving a wake of damaged young victims behind. Further, based on McKeever's history and established pattern of sexually deviant behavior, the trial court properly determined that there is undue risk that during a period of a suspended sentence or probation, McKeever would commit another crime. Therefore, a life sentence in this case as a fourth felony habitual offender is appropriate and should not be considered excessive, as it does not shock the sense of justice, nor is it grossly disproportionate to the severity of the offense. Rather, it makes a reasonable contribution to acceptable penal goals, as it will prevent a proven recidivist from committing more egregious sexual crimes against children. McKeever has failed to show that the trial court abused its discretion, and the maximum sentence is supported by the record. Accordingly, this assignment or error is without merit.

Error Patent:

In accordance with La. C. Cr. P. art. 920, the record has been reviewed for errors patent. We note that McKeever was not advised of his

7

right to remain silent during his habitual offender hearing. Before accepting a defendant's admission that he is a multiple offender, the trial court must specifically advise the defendant of his right to a formal hearing, his right to require the state to prove his identity as a multiple offender and his right to remain silent. La. R.S. 15:529.1(D); *State v. Nobles*, 53,453 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1192; *State v. Grimble*, 51,446 (La. App. 2 Cir. 7/5/17), 224 So. 3d 498; *State v. Odom*, 34,054 (La. App. 2 Cir. 11/1/00), 772 So. 2d 281. The failure to advise a defendant of these rights is considered harmless error when the defendant's habitual offender status is established by competent evidence offered by the State at the hearing rather than by admission of the defendant. *State v. Taylor*, 53,934 (La. App. 2 Cir. 5/5/21), 321 So. 3d 486, 500; *State v. Nobles*, supra.

In this case, the State introduced competent evidence of McKeever's habitual offender status, including testimony by Agent Russell Haynes, as well as a photograph of McKeever from his probation and parole records for his 2015 obscenity charges. The probation and parole records contained all of McKeever's identifying information, including the photograph, his birthdate, and social security number. Further, McKeever attended the habitual offender hearing with counsel and opted to remain silent during the hearing. Because competent evidence was offered by the State, we find that the failure to advise McKeever of his right to remain silent constitutes harmless error.

Additionally, the minutes incorrectly state the defendant was denied parole eligibility. The trial court sentenced McKeever to life imprisonment, without benefit of probation or suspension of sentence. To ensure accuracy

8

of the record, we remand this matter to the trial court to delete the restriction of the benefit of parole from the sentencing minute entry.

## CONCLUSION

For the foregoing reasons, Darren McKeever's conviction and sentence are affirmed, and the case is remanded to the trial court to delete the restriction of the benefit of parole from the sentencing minute entry.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

**HUNTER, J., dissenting.**

This defendant was convicted of indecent behavior with juveniles, an offense for which the maximum sentence is seven years' imprisonment with or without hard labor. I believe this case demonstrates the issues associated with rigid application of the Habitual Offender Law by sentencing courts in the State of Louisiana. Pursuant to La. R.S. 15:529.1, the broad sentencing range for this defendant was 20 years to life in prison. The trial court opted to impose a sentence of life imprisonment without the benefit of probation or suspension of sentence.

The Louisiana Habitual Offender Law is among the stiffest of such laws in the nation. The purpose of the Habitual Offender Law is to deter and punish recidivism. *State v. Everett*, 00-2998 (La. 5/14/02), 816 So. 2d 1272; *State v. Baker*, 06-2175 (La. 10/16/07), 970 So. 2d 948, *cert. denied*, 555 U.S. 830, 129 S. Ct. 39, 172 L. Ed. 2d 49 (2008); *State v. Cass*, 44,411 (La. App. 2 Cir. 819/09), 17 So. 3d 486. It is axiomatic the law represents an important means of protecting public safety and punishing recidivism. However, the unfortunate truth is the heftiest penalties are not being reserved for the most serious crimes or the most dangerous offenders.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Sims*, 53,791 (La. App. 2 Cir. 6/30/21), 322 So. 3d 902. I believe the maximum sentence, life in prison, is excessive for this offender and this offense.

I agree defendant's criminal conduct, based on his criminal history, requires a significant period of incarceration. However, I believe a life sentence for this offense, indecent behavior with a juvenile, makes no

1

measurable contribution to acceptable goals of punishment, amounts to nothing more than the purposeless infliction of pain and suffering, and is grossly disproportionate to the severity of the crime.

Moreover, the State filed an amended bill of information, charging defendant as a habitual offender as follows:

***

Darren D. McKeever's first, second, and third amended felony convictions for the purpose of this multibill were for the offense of Obscenity[.] The offense date for these acts was April 8, 2012. Darren D. McKeever was convicted of these offenses on September 21, 2015[.] ***
Therefore, said Darren D. McKeever, is a fourth or subsequent felony offender, as defined by and set forth in La. R.S. 15:529.1[.]
***

Thus, the three predicate convictions for obscenity all occurred on the same date. In *State v. Cass*, *supra*, this Court stated:

In the case *sub judice*, the state seeks to double-count predicate offenses which were **committed** on the same date and time and which arose from one criminal episode. *** [B]oth predicate offenses sought to be utilized by the state for enhancement are based on a single criminal episode or course of conduct.

*Id*. at 490 (Emphasis in original).

Based on the record before us, I do not believe the evidence was sufficient to support the habitual offender adjudication because the predicate offenses were committed on the same date and were seemingly a part of the same occurrence.

For these reasons, I dissent.

2