Judgment rendered October 2, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,850-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

KADEEM J. FISHER                            Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 22-CR-32814

Honorable Nicholas E. Gasper, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Chad M. Ikerd

CHARLES B. ADAMS                       Counsel for Appellee
District Attorney

RHYS E. BURGESS
EDWIN L. BLEWER, III
NANCY F. BERGER-SCHNEIDER
Assistant District Attorneys

* * * * *

Before PITMAN, THOMPSON, and ROBINSON, JJ.

**PITMAN, C. J.**

Defendant Kadeem Fisher appeals his conviction of first degree robbery and his sentence of 33 years at hard labor without benefit of parole, probation or suspension of sentence. He also raises as error the trial court's decision to allow the introduction of evidence of a knife found on himself after the robbery and a toy gun found in his truck, neither of which was proven to be at the scene of the robbery. For the following reasons, Defendant's conviction and sentence are affirmed

## FACTS

The state filed a bill of information charging Defendant with first degree robbery of Progressive Bank in Logansport, Louisiana, in DeSoto Parish, a violation of La. R.S. 14:64.1, in that he intentionally took property having value from the person of another or which was in the immediate control of another, by use of force or intimidation when the offender leads the victim to believe he is armed with a dangerous weapon. The bill of information also charged that he committed the offense of false personation of a peace officer, a violation of La. R.S. 14:112.1(A)(2), but this charge was later dropped.

Prior to trial, the state expressed its intent to introduce evidence that Defendant was arrested with a pocketknife in his pocket and that a toy gun was found in his truck. Defendant's attorney argued the evidence was irrelevant to the state's case, because it never alleged he had a weapon on his person or that any witness saw what they believed to be a weapon. He argued that the state sought to prove the victim reasonably believed he had a weapon based on the placement of his hands, as opposed to seeing the outline of a knife or gun in his pocket. The trial court overruled the

objection and noted defense counsel's objection in the record. The trial was held on July 25 and 26, 2023.

Cody Greer, former DeSoto Parish Sheriff's Office deputy, testified that he was on patrol duty on July 20, 2022, working in Logansport in DeSoto Parish when he received a call from Progressive Bank that it had been robbed. The dispatcher described the vehicle associated with the robbery as a maroon Chevrolet truck with a Texas license plate. Greer went to the bank and secured the scene. He spoke to the teller who told him that a black male had entered the bank. He was not wearing a hat or gloves, and he did not say anything, but passed her a note. She handed him money and then he left. The teller did not tell Greer whether she saw a weapon. She only stated she saw a note and complied with the note.

Deputy Hunter Martinez, DeSoto Parish Sheriff's Office patrol deputy, testified that he was informed that the suspect left in a red pickup truck with a Texas license plate. The description given of the suspect was that he was wearing a black shirt, blue jeans and Jordan shoes. Dep. Martinez testified that he drove around Logansport looking for the vehicle and found it on Price Street in the northwest side of town. He stated that it was parked in a driveway of a house on the corner, was a red or maroon pickup truck with the last name Fisher across the back and it had a Texas license plate. He parked his patrol unit behind the truck so that it could not be moved.

The state played a video, which Dep. Martinez identified and narrated sporadically. Dep. Martinez testified that as he approached the house, other law enforcement arrived, and Defendant came out of the front door wearing the same clothes as previously described. He was taken into custody and

2

advised of his *Miranda* rights.  Dep. Martinez handcuffed Defendant, searched his pocket and found his wallet that contained his identification ("ID").  He patted down Defendant, who also had some keys and a knife in his pocket.  Dep. Martinez asked him where the money was, and Defendant replied, "In my wallet."  The deputy found $1,793 in the wallet.

The video showed Dep. Martinez counting the money, taking pictures of Defendant's ID and license plate and relaying the information to run the registration on the vehicle.  He put the money and driver's license in a bag, and it was seized as evidence.  He testified that his body camera, two frontward car cameras and one camera in the back seat of his unit all ran simultaneously.

The back-seat video showed Defendant speaking to Dep. Martinez; he admitted that the red truck was his and that it was the vehicle he used to go to the bank that morning.  The deputy asked Defendant where the rest of the money was that was taken from Progressive Bank, and Defendant told him he had bought gas and cigarettes and some other items at the truck stop in Logansport.  Dep. Martinez asked him if he had a receipt for the items he bought at the truck stop, but Defendant said he did not.  Dep. Martinez relayed this information to Detective Cody Bailey.  Dep. Martinez took Defendant to the jail.

Clayton Clark, assistant vice president of Progressive National Bank, testified that all the banks are equipped with security surveillance cameras and that he is in charge of recovering any footage from the bank's cameras.  After receiving a call that a robbery had occurred in Logansport, he helped the police recover the footage from that day.  He identified the video he provided to the police.

Det. Cody Bailey of the DeSoto Parish Sheriff's Office, Criminal Investigation Division ("CID"), testified he watched the security footage at the bank. He identified the footage from the bank as the state's attorney played it in the courtroom. He stated that the person in the video was Defendant, wearing the same clothes that matched the description he had been given, and then he identified Defendant in the courtroom.

Det. Bailey also identified Lafrita Garrett, the teller with whom Defendant interacted. Another teller, identified as Ms. Rambin, was sitting to Ms. Garrett's right. As the video played, Det. Bailey narrated and said that Defendant put a note on the counter, and Ms. Garrett pulled it toward herself to read it. When she realized what the note said, she handed Defendant $2,000, and he turned and walked away. The video from another angle showed that Ms. Garrett attempted to keep the note, but Defendant pulled it away from her. Det. Bailey identified Defendant's red Chevrolet truck with aftermarket wheels and a push bumper on the front. The video continued and Defendant could be seen leaving the bank and getting into the truck. A camera from an ATM machine showed the truck leaving the lot and turning toward U.S. Highway 84.

Det. Bailey stated that they had just dusted Ms. Garrett's workplace for latent prints and had found none when he received a call from Dep. Martinez that Defendant had been arrested. Dep. Martinez also told him that some of the money had been spent at the truck stop, so he went and spoke to one of the cashiers and gave her a description of the Defendant and his truck. She remembered that Defendant had gone into the truck stop two different times and provided three receipts. The first one was stamped 9:24 a.m. and was for a bottle of 10W-30 Pennzoil oil, some Camel

4

cigarettes and two sandwiches in the amount of $25.92. Defendant paid with a $100 bill. The second receipt showed that he used the change of $74.08 to pay for gas at pump number two at the truck stop. The cashier told the detective that Defendant returned to the store and a third receipt was generated for a Red Bull and a 20-ounce Dr. Pepper for $6.33 and that he paid with another $100 for that transaction and received $93.67 in change. The detective recovered the two $100 bills from the register at the truck stop, took pictures of them and then logged them into evidence. The receipts were entered into evidence.

The state played the video of the Defendant being interviewed in the CID interview room on July 20, 2022. During the questioning, Defendant told the detectives that he wrote a note at his house and then went to the bank and gave it to the teller. He told them the note said, "I'm not (*sic*) officer. I'm in a bind. I need two thousand dollars, and don't make any certain (*sic*) movements." Defendant also told them that he had said he was a federal officer. He also stated that the $2,000 from the bank was in $100 bills. He admitted spending the money at the Logansport truck stop and stated that he used two $100 bills to pay for the items. When asked about the note, Defendant told them that he had torn it up and put it in the trash by the gas pump at the truck stop.

The state's attorney produced a camouflage knife with a picture of a deer on it that had been turned over to Det. Bailey by Dep. Martinez after Defendant was apprehended. Det. Bailey bagged it, sealed it and logged it in as evidence.[1]

---

[1] The knife was not in the evidence folder transmitted to this court.

Shannon Rambin, former teller at the Progressive National Bank in Logansport, stated that she was working with Stephanie Smith, Lafrita Garrett and Reggie Speights on July 20, 2022. She testified that she saw Defendant walk into the bank and that he did not say anything, even though he had been greeted. She saw him hand Ms. Garrett something, and then she noticed that Ms. Garrett looked confused and was not behaving normally. She also noticed that Ms. Garrett did not process the transaction in the computer beforehand but, instead, simply opened her cash drawer and slid the money to him; and then he left.

She stated that she knew something was "out of the ordinary" based on Ms. Garrett's behavior, so she looked at her and asked, "Did that just happen? Is that what just happened?" She testified that Ms. Garrett became very upset, got up to lock the door and to try to get the license plate number from the vehicle. Rambin stated that she got a "decent" look at Defendant, but that her main focus was on Ms. Garrett. Ms. Garrett called Defendant's license plate number out to her and she wrote it down. She said Ms. Garrett was frantic, very upset, crying and beside herself, and that she might have been having a panic attack.

Stephanie Smith, branch manager of the Logansport Progressive National Bank, testified that she saw Defendant when he walked into the bank. Smith greeted him, but he did not respond. He was "very zoned in" and walked straight to Ms. Garrett's station. Smith stated that she went to the restroom, and a few minutes later, someone was beating on the door telling her that the bank had been robbed. She testified that she thought Ms. Garrett was having a heart attack because she was so upset, describing her panic level at above ten. She stated that instead of hitting the panic

6

button, she immediately called the sheriff's office on her cell phone and then called the president of the bank. She did not see what occurred at Ms. Garrett's station because she had been in the restroom, and Defendant was gone by the time she came out. She also called an ambulance for Ms. Garrett to be checked by EMS.

Det. Russ Jones, criminal investigator with the DeSoto Parish Sheriff's Office, testified that he was sent to the truck stop to recover the note and found several pieces of it that had been torn up in the trash can closest to the building. He took the pieces back to the station, and he and Det. Bailey put the pieces back together and laminated it. The note was introduced into evidence. It said, "I'm a federal officer. I'm in a bind. I need $2,000 dollars. Don't make any certain movements please."

Detective George Walton obtained a search warrant for Defendant's vehicle, which had been towed for storage to the sheriff's office range. Det. Jones also assisted in the vehicle search, during which they found a black toy gun located between the driver's seat and the middle console. Det. Walton put it in an evidence bag, and it was admitted into evidence.

Lafrita Garrett, teller at the Logansport bank, testified that when Defendant handed her the note, she noticed that it was "taped," so she knew something was not right. She said her training had taught her not to touch such a note, so she held a pen and brought it closer so she could read it. She stated that she read it, looked at Defendant, read it again, and on the third time, when she looked down, "He reached into his pocket and I got scared because I believed that he was armed, and I didn't know what was going to happen next. And I quickly proceeded to give him what he had asked for." When asked why she gave him the money, she stated:

> Because. . . he wanted the money, and then, when I was steadily
> looking at him in disbelief, it was like I was taking too long,
> like I might've agitated him, maybe, because of the look that
> was on his face. And then he stepped back and he put his hand
> in his pocket, and I was really fearful at that point.

She stated that she was seated at the time and because of the counter level, she could not see below Defendant's waist. She was asked whether she saw if his hand was in his pocket. She replied, "He reached in his back pocket." She later modified that answer and said she saw his hand go "in the general area of the pocket." She was asked if there was anything in the note that scared her, and she replied, "Yes. No sudden moves." She interpreted this statement to mean "do not do anything strange, out of the ordinary because I could possibly be hurt or anything, so I was scared." She said she was in fear, frantic, at a fear level of ten and that an ambulance had to be called for her to get checked out. She thought she was having an anxiety attack, and her heart was racing. The attorney asked if she thought she was going to get shot or otherwise hurt if she did not comply with the note, and she said she did.

On cross-examination she was questioned about her on-site interview with Det. Bailey in which she told him she was worried because she could not see the perpetrator's hand. When she recalled saying that, he pointed out that her testimony on the day of trial was that she saw Defendant reach into his pocket. She replied, "Yeah, body movement." The attorney asked, "But you didn't actually see him reach into his pocket, you saw him move and you assumed he was reaching into his pocket. Is that correct?" She replied, "No sir, I could tell he was going to his pocket." She stated she could "see from how he was standing and everything." However, she stated again that

8

she could not see his hands, and she never saw a weapon and did not know if he had one. She confirmed that she thought he had a weapon.

The defense did not present a case.

The jury unanimously found Defendant guilty of first degree robbery. A PSI was ordered, and sentencing took place on October 5, 2023. Prior to sentencing, the trial court discussed the PSI and stated that Defendant is a 28-year-old man with two children. He was 27 at the time of the offense. He lives in Texas most of the time, has worked in the oil field and the longest job he has held was five or six years. A sanity commission was appointed to examine him because he has been diagnosed with depression, anxiety and PTSD and has had medication prescribed for visual and auditory hallucinations. However, both doctors who examined him stated that he was competent to stand trial, and one found he exhibited behaviors consistent with a person exaggerating a mental disorder. Defendant has a substance abuse issue.

The PSI showed that all of Defendant's prior crimes were committed in Texas. His criminal record began in 2015 with a DWI for which he received probation, but the probation was revoked. Later that year he was convicted of felony theft, placed on probation, but it was revoked. He was convicted of possession of methamphetamine after an arrest in 2016. He was given probation, but it was revoked. In 2017, he pled guilty to assault on a family/household member, with impeding breathing/circulation, and interfering with emergency communication. In 2019 he was convicted of possession of a prohibited weapon and possession of a controlled dangerous substance. He was sentenced to jail time and was still on parole for that

9

crime when the robbery occurred. The conviction of the crime in this case is his fifth felony conviction since May 2015.

The trial court noted that La. R.S. 14:64.1 provides that whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than 3 years and for not more than 40 years, without benefit of parole, probation or suspension of imposition or execution of sentence. It stated that it had considered all the factors of La. C. Cr. P. art. 894.1 and specifically noted the five felony convictions and Defendant's inability to serve out his parole without committing another crime. The trial court imposed a sentence of 33 years without benefit of parole, probation or suspension of sentence, recommended drug treatment programs be available to him and imposed a $150 fee for the preparation of the PSI.

Defendant appeals his conviction and sentence.

## DISCUSSION

*Sufficiency of the evidence*

Defendant argues that the evidence was insufficient to prove he is guilty of first degree robbery because the state failed to prove both the subjective and objective elements of the crime. He also contends that even if Ms. Garrett subjectively believed him to be armed, that belief was not reasonable under the circumstances.

Within the context of the issue of sufficiency of the evidence, Defendant raises as error that the trial court abused its discretion when it allowed the introduction of the knife found in his pocket upon his arrest and a toy gun found in his truck at the time of the search pursuant to a warrant. He argues that introduction of the knife and toy gun was unnecessary and prejudicial because no one in the bank saw a knife or toy gun and the

implication was that he was armed when he went into the bank thereby giving credence to Ms. Garrett's dramatic response to an otherwise mildly upsetting bank robbery.

Defendant further argues that Ms. Garrett's subjective statement that she believed he had a weapon was based on information she later conceded was untrue, namely that he put his hand "in" his pocket, as opposed to the "general area" of his back pocket. He argued that no person in the bank saw him with a weapon, or said they thought he had one, and there was no evidence he used or possessed a weapon. Therefore, there was no proof presented by the state to show that Ms. Garrett could reasonably believe he was armed.

The state argues it proved that Ms. Garrett clearly believed Defendant was armed, which is an essential element of the crime with which he was charged. It claims that when viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to conclude Ms. Garrett had a reasonable belief that Defendant was armed with a dangerous weapon.

First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon. La. R.S. 14:64.1(A); *State v. Grimble*, 51,446 (La. App. 2 Cir. 7/5/17), 224 So. 3d 498. The state must prove that the defendant induced subjective belief in the victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances. *Id.* Direct testimony by the victim that he believed the defendant was armed, or

11

circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery. *State v. Mosley*, 43,669 (La. App. 2 Cir. 10/22/08), 996 So. 2d 1138.

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence or other legislation. La. C.E. art. 402. Evidence which is not relevant is not admissible. *Id.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay or waste of time. La. C.E. art. 403.

Questions of relevancy and admissibility are discretion calls for the trial judge, and determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. *State v. Hawthorne*, 53,932 (La. App. 2 Cir. 9/22/21), 327 So. 3d 606, *writ denied*, 21-01710 (La. 1/12/22), 330 So. 3d 618. Before demonstrative evidence can be admitted, it must be shown that, more probably than not, the evidence is connected to the case. *State v. Burd*, 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So. 2d 35. That foundation can be laid by establishing a chain of custody of the evidence, or by visual identification. *Id.* Once that foundation is established, the weight to be given the evidence is a question for the jury. *Id.* The erroneous admission of such evidence is subject to harmless error analysis. *Id.* A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity or variance which does not affect substantial rights of the accused. La. C. Cr. P. art. 921.

12

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *Grimble*, *supra*. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/06/09), 21 So. 3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09), 23 So. 3d 913.

An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. *Grimble*, *supra*. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *Id.*

The record shows that the state proved that Defendant entered the bank, placed Ms. Garrett in fear by handing her the note that told her not to

13

make any "certain" moves and then he made movements which led her to believe that he was armed. She was intimidated by the situation and handed him $2,000 of the bank's money. She was so upset that an ambulance had to be called. The evidence viewed in a light most favorable to the prosecution demonstrates sufficient evidence to prove every element of the crime of first degree robbery, and the conviction is affirmed.

This assignment of error is without merit.

Defendant asserts that the admission into evidence of the knife and toy gun was prejudicial. However, we find that their introduction into evidence was not prejudicial because the elements of the crime charged were satisfied even if they had not been introduced. It was irrelevant to the crime whether Ms. Garrett, or anyone, saw a weapon, as long as Defendant led her to reasonably believe he was armed with a dangerous weapon. For this reason, the introduction of the knife and gun was harmless error at worst. The error, if any, did not affect any of the substantial rights of Defendant.

For this reason, this assignment of error lacks merit.

*Excessive Sentence*

Defendant argues that the trial court imposed an excessive sentence. He contends that even when a sentence falls within the statutory sentencing range, it may still be constitutionally excessive if it shocks the sense of justice or makes no meaningful contribution to acceptable penal goals. He asserts that his sentence is excessive because he made no overt threats to Ms. Garrett and did not try to intimidate her by pretending to have a weapon. Although she was scared, he never physically harmed her. He argues that he was cooperative with police and did not flee to Texas, even though Logansport is located on the Texas border. He noted that the PSI indicated

14

he had been diagnosed with various mental health issues, including depression, anxiety and PTSD, and that he had been prescribed medicine for auditory and visual hallucinations.

The state argues that a trial court has broad discretion to sentence within statutory limits; and, absent a showing of an abuse of discretion, the sentence should not be set aside as excessive. It contends that the sentence is not abusive; and, in fact, Defendant was not charged as an habitual offender, which would have resulted in the possibility of a life sentence because this is his fifth felony offense.

The penalty for first degree robbery is imprisonment at hard labor for not less than 3 years and for not more than 40 years, without benefit of parole, probation or suspension of imposition or execution of sentence. La. R.S. 14:64.1(B).

The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. *State v. King*, 43,575 (La. App. 2 Cir. 9/17/08), 996 So. 2d 383. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. *Id.* The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *Id.*, *citing State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Lathan*, 41,855 (La. App. 2 Cir. 2/28/07), 953 So. 2d 890, *writ denied*, 07-0805 (La. 3/28/08), 978 So. 2d 297. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. *King*, *supra*.

15

There is no requirement that specific matters be given any particular weight at sentencing. *Id.*

Second, a sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *King*, *supra.* A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *Id.*

A trial court has broad discretion to sentence within the statutory limits. *King*, *supra.* Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. *Id.*

In this case, the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1, reviewed the PSI that had been ordered, took notice of Defendant's age, education, number of children and the fact that he had been diagnosed with various mental conditions requiring medication. It also noted that a sanity commission had been ordered, but both doctors indicated that Defendant was competent and able to stand trial. One doctor opined that Defendant exhibited behaviors consistent with a person exaggerating a mental disorder. It reviewed Defendant's criminal record and specifically noted his five felony convictions and his inability to serve out his parole without committing another crime.

The sentence imposed of 33 years at hard labor without benefit of parole, probation or suspension of sentence is well within the limits proscribed in La. R.S. 14:64.1. Based on a review of the record, the sentence imposed is not constitutionally excessive and is affirmed.

This assignment of error lacks merit.

16

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant

Kadeem J. Fisher are affirmed.

**AFFIRMED.**